**Robert SHERELIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 484S141.

Supreme Court of Indiana.

Oct. 23, 1986.

David W. Mernitz, John W. Van Buskirk, Stark Doninger Mernitz & Smith, Indianapolis, Stephen R. Bowers, Elkhart, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from conviction by a jury of four counts of delivery of a controlled substance in excess of 3 grams, a Class A Felony, I.C.35–48–4–1, and from conviction of one count of delivery of a controlled substance of less than 3 grams, a Class B Felony, I.C.35–48–4–1. Appellant received a 30 year sentence for each Class A Felony and a 20 year sentence for the Class B Felony.

Appellant raises eight issues on appeal: (1) whether the trial court erred in its determination that cocaine hydrochloride is a controlled substance within the meaning of I.C.35–48–4–1; (2) whether the trial court erred in admitting testimony concerning negotiations for purchase of weapons and a reference to John DeLorean; (3) whether the trial court erred in limiting appellant's examination of two witnesses; (4) whether the trial court erred in not permitting introduction of appellant's Exhibit "G"; (5) whether the trial court erred in refusing portions of appellant's tendered Preliminary Instruction No. 7 and Final Instruction No. 10; (6) whether the trial court denied appellant due process and a fair trial; (7) whether the trial court should be ordered to reduce the amount of bail in the event of reversal; and (8) whether the judgment was supported by the evidence.

These are the facts from the record that tend to support the determination of guilt. On August 5, 1982 appellant was introduced to two undercover Elkhart City Police officers. In the early hours of August 6, 1982, appellant gave a small amount of cocaine hydrochloride to an undercover Elkhart City Police officer. This delivery resulted in Count II, delivery of a controlled substance of less than 3 grams. Later in the same day, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On September 15, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On September 24, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On October 29, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. These deliveries resulted in Counts I, III, IV, and V, delivery of a controlled substance in excess of 3 grams.

## I.

Appellant contends that the trial court erred in its determination that cocaine hydrochloride is a controlled substance within the meaning of I.C.35–48–4–1. Appellant was charged with five counts of violation of I.C.35–48–4–1. The pertinent statute is set forth below:

35–48–4–1. Dealing in a narcotic drug. —A person who;

(1) Knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; or

(2) Possesses, with intent to manufacture or deliver, cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II;

commits dealing in cocaine or a narcotic drug, a class B felony. However, the offense is a class A felony if the amount of the drug involved weighs three [3] grams or more, or if the person delivered the drug to a person under eighteen [18] years of age at least three [3] years his junior.

Initially appellant focuses on I.C.35–48–4–1(1), "knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, pure or adulterated, *classified in Schedule I or II.*" Based on this language, he asserts that in order to violate I.C.35–48–4–1, the substance must be classified in schedule I or II. While cocaine is listed in Schedule II (I.C.35–48–2–6), the listing appears as "cocaine(9041)". Appellant alleges that the listing of cocaine is modified by the four digit DEA number in brackets which follows the listing. While testimony was at times contradictory, it was established at trial that cocaine base has a DEA number of 9041 while cocaine hydrochloride, a salt of cocaine and the substance in question here, has a number of 9042. Appellant submits that the DEA number in brackets limits the referent of the word "cocaine" in Schedule II to cocaine base and that since cocaine hydrochloride is not listed in Schedule II, it is not proscribed by I.C.35–48–4–1. Based on this interpretation of the statute, appellant filed a Motion to Dismiss prior to trial and objected to introduction of the cocaine hydrochloride into evidence.

It is well settled that when construing a statute, a court "may not view it in isolation, but must ascertain its effect and application by viewing it in context with the entire act." *Smith v. State Ex. Rel. Medical Licensing Bd.*, (1984), Ind.App., 459 N.E.2d 401, 404. If I.C.35–48–4–1 and I.C.35–48–2–6 constituted the entire statute, appellant's argument would be compelling. However, other portions of Article 48 are relevant. The pertinent portions of the Article are as follows:

35–48–1–1. Definitions:—As used in this article: ...

(2) ....................................

.......... "Cocaine" includes coca leaves and any salt, compound, or derivative of coca leaves, and any salt, compound, isomer, derivative, or preparation which is chemically equivalent or identical to any of these substances; however, decocainized coca leaves or extraction of coca leaves that do not contain cocaine or ecgonine are not included.

35–48–2–2. Nomenclature.—The controlled substances listed in the schedules in sections 4, 6, 8, 10 and 12 [35–48–2–4, 35–48–2–6, 35–48–2–8, 35–48–2–10, 35–48–2–12] of this chapter are included by whatever official common, usual, chemical, or trade name designated. The number placed in brackets after each substance is its federal drug enforcement administration controlled substances code number which is to be used for identification purposes on certain certificates of registration.

The definitional section clearly includes cocaine hydrochloride (cocaine salt) and the language "[a]s used in this article" affects the meaning of "cocaine" throughout the article. Further, I.C.35–48–2–2 limits the purpose of the DEA number. Reading the statute as a whole, any time the word "cocaine" appears in Article 48, one would read the word "cocaine" to mean:

"Cocaine" includes coca leaves and any salt, compound, or derivative of coca

leaves, and any salt, compound, isomer, derivative, or preparation which is chemically equivalent or identical to any of these substances; however, decocainized coca leaves or extraction of coca leaves that do not contain cocaine or ecgonine are not included.

Therefore, the listing of cocaine in Schedule II clearly includes cocaine hydrochloride. Further, the purpose of the DEA number in brackets is specifically mentioned in I.C.35–48–2–2 as being for identification purposes on certain certificates of registration. The trial court did not err with its determination that cocaine hydrochloride is a controlled substance within the meaning of I.C.35–48–4–1.

## II.

■ Appellant contends that the trial court erred by admitting into evidence testimony concerning negotiations for the purchase of weapons and a reference to John DeLorean. Appellant argues that the testimony concerning weapons was evidence of past crimes or criminal actions not related to the charged crimes and wholly inadmissible. However, this particular testimony falls within the res gestae exception. In *McCormick v. State,* (1982), Ind., 437 N.E.2d 993, 995–96, this court stated:

"Our decisions allow the admission of evidence of unrelated criminal activity where the witness' testimony is necessary to complete the story of the criminal transaction, e.g., *Clemons v. State,* (1981) Ind., 424 N.E.2d 113, 117 (cases cited therein); *Lee v. State* (1977), 267 Ind. 315, 320, 370 N.E.2d 327, 329, or where the evidence may reveal the accused's state of mind. E.g., *Choctaw v. State* (1979), [270] Ind. [545], 387 N.E.2d. 1305, 1307, *Dickinson v. State* (1944), 222 Ind., 551, 556, 55 N.E.2d. 325, 327."

Also, in *Clemons v. State,* (1981) Ind., 424 N.E.2d 113, 117, this court acknowledged that "this state has long recognized that happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae.*"

While technically discussion of purchase of weapons did not take place at the exact moment of delivery of the controlled substance, the weapons discussions were intertwined with the drug negotiations and a part of a continuing pattern. Excising all weapons discussions would have resulted in an incomplete story.

Further, the state's first witness, Cindy Oyer, testified solely to appellant's predisposition. Her testimony revealed that appellant had invited people he met in a restaurant to his home on previous occasions and that drug consumption was involved. Appellant did not object to her testimony and even indicated in a response to an objection from the state that predisposition was at issue.

Appellant relied in part on a defense of entrapment, bringing predisposition into issue. Testimony showed that appellant planned to use a large amount of cocaine to purportedly pay for the weapons, and access to large quantities of cocaine is proper evidence on the issue of predisposition. The admission of testimony relating to negotiations for purchase of weapons was not error.

Regarding the mention of John DeLorean, a review of the record reveals nothing to link appellant with DeLorean. The reference to DeLorean was minor and read in context does not associate him with the appellant.

## III.

■ Appellant further contends that the trial court erred in limiting appellant's examination of two witnesses. With respect to the witness Jean Bradley, the trial court sustained an objection to a question presented by appellant. The question by appellant "Do you know why those matters are not in that statement?" is subject to different interpretations. However, given the form of the question and the fact that counsel for defendant did not rephrase the question, it was well within the province of the trial court to sustain the objection.

■ Appellant also alleges his examination of his expert witness, Dennis Stout, was unduly limited. He alleges that the trial court erred in limiting his questioning to exclude the term "pharmaceutical use". Appellant's witness declined to testify to matters outside his expertise, pharmacy. Appellant's offer to prove indicated the witness would testify to the differences between cocaine base and cocaine hydrochloride. It is unnecessary to reach the issue whether the court erred in excluding reference to "pharmaceutical use" as it is generally held that no case will be reversed for an error which does not affect the substantial rights of the party. "No prejudicial error results from an exclusion of evidence where facts sought to be proved by it are established by other evidence admitted before or after exclusion." *Smith v. State*, (1968) 250 Ind. 125, 132, 235 N.E.2d 177, 181.

■ In the present case, the state presented two expert witnesses and the defendant himself was qualified as an expert. There was no disagreement between any of these witnesses that cocaine base and cocaine hydrochloride are distinct substances. Therefore, regardless of whether the term "pharmaceutical use" was proper, no reversible error was committed by exclusion of that term.

### IV.

Appellant contends that the trial court erred with its refusal to admit appellant's Exhibit "G", a certified copy of the relevant statute containing the changes from the previous statute. This court believes that this is an issue of law which could properly be argued in final summation. However, it was the province of the trial court to instruct the jury on the relevant law and regardless of the purpose for which appellant sought to introduce the statute, the instruction to the jury was a matter for the trial judge.

As we stated in *McClain v. State* (1980), 274 Ind. 250, 410 N.E.2d 1297:

Criminal statutes are written directives to the judicial branch of government and to juries by the popularly elected representatives of the citizenry acting as a body. They are to be enforced according to their plain meaning so long as they are consistent with the constitutions. Neither courts nor juries are empowered to rewrite such statutes, and it has long been deemed the province of the court rather than the jury to select or focus upon the statutes which are intended to govern in a particular case. * * * * It is the duty of courts to charge the jury in a criminal case as to "all matters of law which are necessary for their information in giving their verdict." Ind. Code § 35-1-35-1. [For current provision, see Ind. Code Ann. § 35-37-2-2(5) (West Supp. 1984).] It is the duty of juries to "determine the law" after receiving it from the court in a form which does not bind their consciences or prevent them from evaluating the legal and statutory formulations for themselves and applying their evaluations to the particular case. *Burris v. State* (1941), 218 Ind. 601, 34 N.E.2d. 928. The selection by the court of the governing statutes in a criminal case does not impinge upon the right of juries to "determine the law.

410 N.E.2d at 1303–1304.

And in *Candler v. State* (1977), 266 Ind. 440, 456, 363 N.E.2d 123, 1242, this court wrote:

It is the province of the trial court to explain the law to the jury. *Burris v. State*, (1941) 218 Ind. 601, 34 N.E.2d 928. The jury has the power, but not the right, to substitute its own conception of the law for the court's instructions. *Beavers v. State* (1957), 236 Ind. 549, 141 N.E.2d 118.

■ The only information contained in Exhibit "G" which the jury did not receive through the court's instruction was the portion reflecting the statute prior to 1979 and it was proper for the trial court to determine that it should not come in as part of the formal proof.

### V.

Appellant raises the question of error on the part of the trial court for refusing to

give appellant's tendered Preliminary Instruction No. 7 and Final Instruction No. 10.

The trial court eliminated the middle paragraph of appellant's tendered instructions. As tendered, the instructions read:

### STRICT CONSTRUCTION OF CRIMINAL STATUTES

You are instructed that it is a basic rule of criminal justice that criminal statutes be strictly construed, and their ambiguities, if any, resolved in favor of the accused and against the State.

An adherence to the rule of strict construction is demanded, even though it might be argued that the legislature's statutory proscription should have been more comprehensive. Strict construction of criminal statutes is necessary in order to eliminate the spectre of criminal laws subjectively applied or unwittingly violated.

Therefore, if you find that there is any ambiguity in the criminal statutes under which the Defendant has been charged, you should strictly construe the language of the statute and resolve such ambiguity in favor of the innocence of the Defendant.

■ This court believes that the substance of the middle paragraph is covered by the surrounding paragraphs. The strict construction concept is completely formed by the first and third paragraphs and further incursions into the underlying policies surrounding the rule are unnecessary. The instruction as given was complete in form and no error was committed by omitting the explanatory paragraph.

### VI.

■ The appellant next alleges that the cumulative effect of numerous errors denied appellant due process of law and a fair trial. Ordinarily, as a general rule, errors in their cumulative effect are not sufficient to constitute reversible error. Further, we believe that appellants allegations of error are not supported by the evidence.

■ Appellant claims as error the denial of his Motion for Change of Venue or in the alternative sequestration of the jury. Resolution of the issues presented by these motions is primarily for the trial court, to be arrived at by evaluating the interests on all sides of the case. The trial judge is well within the realm of reason to deam an admonishment to the jury sufficient to counteract any publicity.

Next appellant claims error alleging he was denied a hearing on his Motion for Change of Judge. We believe that absent any indication, at the time of the ruling, that the judge would not have heard any relevant evidence, the opportunity to present evidence was overlooked and bypassed by the appellant.

Next appellant claims error in the admission of testimony concerning negotiations for the purchase of weapons and in restricting his examination. These allegations have been dealt with in Issues III and IV.

■ Finally appellant alleges prosecutorial misconduct. The only area of inquiry here which has been preserved is a remark made in final argument which the jury was admonished to disregard. For a finding of reversible error based on prosecutorial conduct the conduct must not only be misconduct but must also place the defendant in "grave peril" to which he would not otherwise have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, 848.

The specific remark made by the prosecutor is set forth below:

"Mr. Bowers told you that when the defendant originally testified on direct examination, he thought it was just about the worst client that he had ever had. I don't disagree with that. That's probably a sad commentary on the integrity of Mr. Bowers' other clients."

■ While the above comment was improper, it's meaning is also unclear and we do not believe that it subjected appellant to "grave peril" and therefore will not support a reversal. Since this Court has not

found appellant's assertions to constitute error, the cumulative effect of these occurrences did not deprive appellant of due process of law.

### VII.

Appellant also asks this court to order reduction of the amount of bail in the event of reversal of his conviction. This is an action which we will not have the occasion to address.

### VIII.

Finally, appellant contends that the judgment was supported by insufficient evidence because there was no evidence showing a violation of a criminal statute. We reiterate our discussion in Issue I on this point.

The petition for Oral Argument is Denied and the conviction is affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.