**Robert T. SHERELIS, Petitioner,**

v.

**Jack R. DUCKWORTH and Indiana Attorney General, Respondents.**

Civ. No. S 87–397.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 18, 1987.

David Mernitz, Indianapolis, Ind., for petitioner.

David A. Nowak and David R. Treeter, Office of Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The petitioner, Robert T. Sherelis, who is represented by retained counsel, filed this petition seeking relief under 28 U.S.C. § 2254 on July 9, 1987. The petitioner was convicted in the Elkhart Circuit Court at Goshen, Indiana, of four counts of delivery of a controlled substance in excess of three grams, and one count of a delivery of a controlled substance of less than three grams. Judge Gene R. Duffin of that court imposed a sentence of 30 years for the first four counts, and a sentence of 20 years for the last count. A direct appeal was taken to the Supreme Court of Indiana, which Court unanimously affirmed the aforesaid convictions in an opinion reported at 498 N.E.2d 973 (Ind.1986), and authored by Justice DeBruler.

This petition for a writ of habeas corpus raises three issues:

Ground One; the statute under which the petitioner was convicted does not proscribe the sale or delivery of the chemical substance which the proof at trial showed as delivered;

Ground Two: the statute under which the petitioner was convicted is unconstitutionally vague and ambiguous, and failed to give the petitioner fair warning that his conduct was proscribed by law;

Ground Three: the state failed to prove each and every element of the offense charged beyond a reasonable doubt, in violation of the Constitution.

This court has received and examined the record of the state court proceedings pursuant to the mandate of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

In his direct appeal to the Supreme Court of Indiana, the petitioner raised eight issues as follows:

1. Whether the trial court erred in its determination that cocaine hydrochloride is a controlled substance within the meaning of I.C. 35–48–4–1;

2. Whether the trial court erred in admitting testimony concerning negotiations for purchase of weapons and a reference to John DeLorean;

3. Whether the trial court erred in limiting appellant's examination of two witnesses;

4. Whether the trial court erred in not permitting introduction of appellant's Exhibit "G";

5. Whether the trial court erred in refusing portions of appellant's tendered Preliminary Instruction No. 7 and Final Instruction No. 10;

6. Whether the trial court denied appellant due process and a fair trial;

7. Whether the trial court should be ordered to reduce the amount of bail in the event of reversal;

8. Whether the judgment was supported by the evidence.

## II.

Respondents contend that petitioner's petition is one which is a "mixed" petition; i.e., one containing both exhausted and unexhausted issues. See *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). It is axiomatic that a petition containing only unexhausted issues or a petition which is "mixed" must be dismissed. See *Rose, supra,* and *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). Petitioner naturally contends that all three of the issues presented have been exhausted in the state courts.

Both petitioner and respondents agree that Ground One has been exhausted in the state courts.

In regard to Ground Two, petitioner asserts that this issue has been presented to the Supreme Court of Indiana, and the respondents contend that such issue has not been presented to the Supreme Court of Indiana. It appears from the record that the issue of whether the convicting statute was overbroad and vague was presented to the Supreme Court of Indiana. See pp. 44 *et seq.* of petitioner's state appellate brief. Petitioner, however, presented such issue within the context of the claim asserted in Ground One; i.e., whether the statute, I.C. 35–48–4–1, prohibited the sale or delivery of cocaine hydrochloride.

■ The question which must be answered as to whether an issue has been fairly presented to the state courts is whether that issue has been placed before the state courts in a manner such that the constitutional issue is clear. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). In determining whether a petitioner's habeas corpus claim has been fairly presented to the state court, the test is "whether any of petitioner's claims is so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim." *United States ex rel. Cole v. Lane*, 752 F.2d 1210, 1219 (7th Cir.1985), citing *Humphrey v. Cady*, 405 U.S. 504, 517 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972). See also *Barrera v. Young*, 794 F.2d 1264 (7th Cir.1986). Compare *United States ex rel. Miller v. O'Leary*, 651 F.Supp. 174 (N.D.Ill.1986), aff'd without opinion, 828 F.2d 22 (7th Cir. 1987). The Court of Appeals for the Seventh Circuit has further held that where a question is fairly presented to the state court, and the state court had an opportunity to rule on the same question, that question may be considered by a federal court even if the state court did not rule on the question. *Arrowood v. Clusen*, 732 F.2d 1364 (7th Cir.1984). "A federal habeas corpus petitioner has 'fairly represented' a claim to a state court if he has clearly informed the state court of the factual basis of that claim and has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights." *Toney v. Franzen*, 687 F.2d 1016, 1021 (7th Cir.1982).

This court will be the first to single out that Ground Two was not specifically designated as an issue on appeal in the state court. However, Ground Two is so inextricably woven into the claim in Ground One that it would be difficult to rule on Ground Two alone. It must be remembered that petitioner did contest the constitutionality of I.C. 35–48–4–1 in his state appellate brief, *supra*. The Supreme Court of Indiana, however, did not specifically mention the constitutionality of the said statute in affirming petitioner's conviction. See *Arrowood v. Clusen, supra*. It is also readily apparent that the issue in Ground Two is not so distinct from the claims petitioner has already presented in state court that the state courts have not already had an opportunity to consider the issue in Ground Two. See *United States ex rel. Cole v. Lane, supra*. Though the issue in Ground Two was covered more directly and comprehensively by petitioner in his habeas petition than on direct appeal from his criminal conviction, this court finds that such issue has been placed before the Indiana state courts in a manner such that the constitutional issue was clear. See *Anderson v. Harless, supra*. Even if the issue in Ground Two had not been presented to the Supreme Court of Indiana, again, it is so inextricably woven into the issue in Ground One that it would be extremely difficult to consider the two issues separately. With caution, this court will consider the issue in Ground Two.

In Ground Three, the issue is whether the state failed to prove each and every element of the offense charged beyond a reasonable doubt in violation of the Constitution. On direct appeal, the petitioner raised the issue of whether the judgment was supported by the evidence. Respondents contend that petitioner did not exhaust the issue in Ground Three in the state courts. It may be arguable that Ground Three was, in fact, raised and presented to the Supreme Court of Indiana. However, it is beyond any argument that the issue as to the constitutionality of the conviction was raised. While the semantics may be at a variance, the substance of Ground Three has been fairly presented to the Supreme Court of Indiana. There has merely been a change in form and not substance.

Thus, all three grounds presented in petitioner's petition have been exhausted in the state courts. The court will consider Grounds One and Two together, and then Ground Three.

Before proceeding further, it must be emphasized that there is no assertion in this record that the petitioner's trial or appellate counsel were ineffective within the meaning of the Sixth Amendment of the Constitution of the United States as defined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## III.

In Ground One, petitioner asserts that the statute under which he was convicted, I.C. 35–48–4–1, does not proscribe the sale or delivery of cocaine hydrochloride. In Ground Two, petitioner contends that I.C. 35–48–4–1 is unconstitutionally vague and ambiguous and did not provide a fair warning to him that his conduct was proscribed. Inherent in Ground Two is the issue in Ground One. Perhaps the discussion of the Supreme Court of Indiana in light of I.C. 35–48–4–1 best captures petitioner's contentions:

Appellant contends that the trial court erred in its determination that cocaine hydrochloride is a controlled substance within the meaning of I.C. 35–48–4–1. Appellant was charged with five counts of violation of I.C. 35–48–4–1. The pertinent statute is set forth below:

35–48–4–1. Dealing in a narcotic drug.—A person who;

(1) Knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; or

(2) Possesses, with intent to manufacture or deliver, cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II;

commits dealing in cocaine or a narcotic drug, a class B felony. However,

the offense is a class A felony if the amount of the drug involved weighs three [3] grams or more, or if the person delivered the drug to a person under eighteen [18] years of age at least three [3] years his junior.

Initially appellant focuses on I.C. 35–48–4–1(1), "knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, pure or adulterated, classified in Schedule I or II." Based on this language, he asserts that in order to violate I.C. 35–48–4–1, the substance must be classified in schedule I or II. While cocaine is listed in Schedule II (I.C. 35–48–2–6), the listing appears as "cocaine (9041)". Appellant alleges that the listing of cocaine is modified by the four digit DEA number in brackets which follows the listing. While testimony was at times contradictory, it was established at trial that cocaine base has a DEA number of 9041 while cocaine hydrochloride, a salt of cocaine and the substance in question here, has a number of 9042. Appellant submits that the DEA number in brackets limits the referent of the word "cocaine" in Schedule II to cocaine base and that since cocaine hydrochloride is not listed in Schedule II, it is not proscribed by I.C. 35–48–4–1. Based on this interpretation of the statute, appellant filed a Motion to Dismiss prior to trial and objected to introduction of the cocaine hydrochloride into evidence.

It is well settled that when construing a statute, a court "may not view it in isolation, but must ascertain its effect and application by viewing it in context with the entire act." *Smith v. State Ex Rel. Medical Licensing Bd.*, (1984), Ind. App., 459 N.E.2d 401, 404. If I.C. 35–48–4–1 and I.C. 35–48–2–6 constituted the entire statute, appellant's argument would be compelling. However, other portions of Article 48 are relevant. The pertinent portions of the Article are as follows:

35–48–1–1. Definitions:—As used in this article: ...

(2) ..............................- .................. "Cocaine" includes coca leaves and any salt, com-

pound, or derivative of coca leaves, and any salt, compound, isomer derivative or preparation which is chemically equivalent or identical to any of these substances; however, decocainized coca leaves or extraction of coca leaves that do not contain cocaine or ecgonine are not included.

35–48–2–2. Nomenclature.—The controlled substances listed in the schedules in sections 4, 6, 8, 10 and 12 [35–48–2–4, 35–48–2–6, 35–48–2–8, 35–48–2–10, 35–48–2–12] of this chapter are included by whatever official common, usual, chemical, or trade name designated. The number placed in brackets after each substance is its federal drug enforcement administration controlled substances code number which is to be used for identification purposes on certain certificates of registration.

The definitional section clearly includes cocaine hydrochloride (cocaine salt) and the language "[a]s used in this article" affects the meaning of "cocaine" throughout the article. Further, I.C. 35–48–2–2 limits the purpose of the DEA number. Reading the statute as a whole, any time the word "cocaine" appears in Article 48, one would read the word "cocaine" to mean:

"Cocaine" includes coca leaves and any salt, compound, or derivative of coca leaves, and any salt, compound, isomer, derivative, or preparation which is chemically equivalent or identical to any of these substances; however, decocainized coca leaves or extraction of coca leaves that do not contain cocaine or ecgonine are not included.

Therefore, the listing of cocaine in Schedule II clearly includes cocaine hydrochloride. Further, the purpose of the DEA number in brackets is specifically mentioned in I.C. 35–48–2–2 as being for identification purposes on certain certificates of registration. The trial court did not err with its determination that cocaine hydrochloride is a controlled sub-

stance within the meaning of I.C. 35–48–4–1.

*Sherelis v. State,* 498 N.E.2d at 975–976.

Before the court determines whether I.C. 35–48–4–1 proscribed petitioner's conduct, it must first determine whether such statute is constitutional. Petitioner chiefly contends that I.C. 35–48–4–1 is vague, and thus, unconstitutional. The relevant part of that statute under which petitioner was convicted states that a person who knowingly or intentionally manufactures or delivers cocaine, which is classified as a schedule II substance, commits a felony. In I.C. 35–48–2–6, schedule II, cocaine appears as "cocaine (9041)." The number "9041" is the Drug Enforcement Agency (DEA) number for cocaine base. Petitioner maintains that he was unjustly convicted for selling cocaine hydrochloride, which has a DEA number of 9042 and does not appear in I.C. 35–48–2–6 as a schedule II controlled substance. As set forth above, the Supreme Court of Indiana has dealt with the issue of different DEA numbers for cocaine base (9041) and for cocaine hydrochloride (9042). *Supra.*

■ Petitioner maintains that the state courts should have interpreted I.C. 35–48–2–6 in a literal fashion and found that it did not proscribe the sale and delivery of cocaine hydrochloride. In citing *Smith v. State ex rel. Medical Licensing Bd.,* 459 N.E.2d 401, 404 (Ind.App.1984), the Supreme Court of Indiana stated that when construing a statute, a court "may not view it in isolation, but must ascertain its effect and application by viewing it in context with the entire act." *Sherelis v. State,* 498 N.E.2d at 975. In another section of the controlled substances article, which has been referred to above, cocaine is defined to include "coca leaves and any salt, compound, or derivative of coca leaves, and any salt, compound, isomer, derivative, or preparation which is chemically equivalent or identical to any of these substances; however, decocainized coca leaves or extraction of coca leaves that do not contain cocaine or ecgonine are not included." I.C. 35–48–1–1. This court finds that petitioner's breakdown of the definition of "cocaine" in

I.C. 35–48–1–1 to be non-compelling and unpersuasive. See petitioner's petition, pp. 29–36, and petitioner's traverse, pp. 18–19.

■ This court does not find error in the holding of the Supreme Court of Indiana. See *Sherelis v. State, supra.* The court agrees with the holding of the high court that a court may not view a statute in isolation, "but must ascertain its effect and application by viewing it in context with the entire act." *Sherelis v. State,* 498 N.E. 2d at 975 citing *Smith v. State ex rel. Medical Licensing Bd.,* 459 N.E.2d at 404. See also *Holland v. King,* 500 N.E.2d 1229 (Ind.App.1986). The Supreme Court of the United States has held likewise. In *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962), the Supreme Court stated:

We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, "we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy." We should not assume that Congress intended to set the courts completely adrift from state law with regard to questions for which it has not provided a specific and definite answer in an act such as the one before us which, as we have indicated, is so intimately related to state law.

See also *Chemehuevi Tribe of Indians v. Federal Power Commission,* 420 U.S. 395, 403, 95 S.Ct. 1066, 1072, 43 L.Ed.2d 279 (1975); *National Labor Relations Bd. v. Lion Oil Co.,* 352 U.S. 282, 288, 77 S.Ct. 330, 333, 1 L.Ed.2d 331 (1957); and *Hirabayashi v. United States,* 320 U.S. 81, 103, 63 S.Ct. 1375, 1386, 87 L.Ed. 1774 (1943). In the Seventh Circuit, see *United States v. Schmuck,* 776 F.2d 1368 (7th Cir.1985). This court will view the statutes in I.C. 35–48 *et seq.* in conjunction with one another. The court agrees with the interpretation of the Supreme Court of Indiana, in regard to I.C. 35–48–4–1, that such statutes includes cocaine hydrochloride.

■ Petitioner's assertion that I.C. 35–48–4–1 should be held void for vagueness is without merit. There is no doubt that a statute is void for vagueness if its prohibitions are not clearly defined. See *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). There it was held that the void for vagueness analysis involves two steps. The first step involves determining whether there has been adequate notices of sanctions to potential offenders of the statute, and the second involves determining whether the statute invites arbitrary and discriminating enforcement. For a recent application of these ideas in this circuit, see *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1129 (7th Cir.1984) *cert. denied*, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985), and *Nova Records, Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir.1983). See also *Waldron v. McAtee*, 723 F.2d 1348, 1354 (7th Cir.1983).

■ When IC 35–48–4–1 is examined and read as Justice DeBruler read it in *Sherelis v. State*, 498 N.E.2d at 975–976, one can only come to the conclusion that cocaine hydrochloride, which is also referred to as cocaine salt, is a substance proscribed by the aforesaid statute. The delivery of cocaine hydrochloride is proscribed by the statute under which this petitioner was convicted. A plain, simple reading of that statute, including all relevant sections thereof, indicates that the conduct for which this petitioner was found guilty is precisely what the statute was intended to proscribe. In other words, the analysis may go beyond the language of the statute and onto the legislative intent of the legislature that drafted the statute. Six score and eleven years ago, the Supreme Court of the United States stated in *Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1856):

The general words used in the clause ... taken by themselves, and literally construed, without regard to the object in view, would seem to sanction the claim of the plaintiff. But this mode of expounding a statute has never been adopted by any enlightened tribunal—because it is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law....

See also *United States v. Richards, supra.* It is clear that legislative intent encompasses the view that a statute should be interpreted in the context in which it appears, and not in isolation. I.C. 35–48–4–1 appears in such a context that a reasonable person, who engages in a reasonable reading of said statute, could easily reach the logical conclusion that the distribution of cocaine hydrochloride is proscribed.

I.C. 35–48–4–1 is not unconstitutionally vague. Such statute does not fall victim to the constitutional fraility that Justice Butler found in a New Jersey statute dealing with the term "gangster:"

The lack of certainty of the challenged provision is not limited to the word "gang" or to its dependent "gangster." Without resolving the serious doubts arising from the generality of the language, we assume that the clause "any person not engaged in any lawful occupation" is sufficient to identify a class to which must belong all capable of becoming gangsters within the terms of the provision. The enactment employs the expression "known to be a member." It is ambiguous. There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, that status must be established as a fact, and the word "known" would be without significance. If reputed membership is enough, there is uncertainty whether that reputation must be general or extend only to some persons. And the statute fails to indicate what constitutes membership or how one may join a "gang."

The challenged provision condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the

due process clause of the Fourteenth Amendment.

*Lanzetta v. State of New Jersey,* 306 U.S. 451, 458, 59 S.Ct. 618, 621, 83 L.Ed. 888 (1939). Nine years later, Justice Frankfurter, dissenting in *Winters v. New York,* 333 U.S. 507, 524–525, 68 S.Ct. 665, 674, 92 L.Ed. 840 (1948), provided useful and relevant insight into the legislative/constitutional void for vagueness problem:

Fundamental fairness of course requires that people be given notice of what to avoid. If the purpose of a statute is undisclosed, if the legislature's will has not been revealed, it offends reason that punishment should be meted out for conduct which at the time of its commission was not forbidden to the understanding of those who wished to observe the law. This requirement of notice that there is a boundary of prohibited conduct not to be overstepped is included in the conception of "due process of law."

. . . .

But whether notice is or is not "fair" depends upon the subject matter to which it relates. Unlike the abstract stuff of mathematics, or the quantitatively ascertainable elements of much of natural science, legislation is greatly concerned with the multiform psychological complexities of individual and social conduct. Accordingly the demands upon legislation, and its responses, are variable and multiform. That which may appear to be too vague and even meaningless as to one subject matter may be as definite as another subject matter of legislation permits, if the legislative power to deal with such a subject is not to be altogether denied. The statute books of every State are full of instances of what may look like unspecific definitions of crime, of the drawing of wide circles of prohibited conduct.

The relevant Indiana statutes pass constitutional muster under the majority opinion in *Lanzetta v. State of New Jersey, supra,* and *Winters v. New York, supra.*

Again, petitioner basically asserts that he was not provided a fair warning that the distribution of cocaine hydrochloride was proscribed by Indiana statute. As previously stated in *Grayned v. City of Rockford, supra,* the first step of the two step analysis to determine vagueness is whether there has been adequate notices of sanctions to potential offenders of the statute. This court finds that petitioner had adequate notice that his conduct here was proscribed.

This court further finds petitioner's assertion that he was prejudicially misled into believing that the sale and distribution of cocaine hydrochloride was not illegal to be incredible. The Supreme Court of Indiana found that petitioner sold cocaine hydrochloride to undercover Elkhart City (Indiana) police officers on five different occasions. *Sherelis v. State,* 498 N.E.2d at 974. The petitioner does not dispute this state court's findings of facts. Those findings of facts are presumed to be correct pursuant to 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). See also *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane,* 818 F.2d 615 (7th Cir. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections,* 817 F.2d 448 (7th Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987). Petitioner did not publicly advertise that he was a seller of cocaine hydrochloride. Instead, petitioner sold his quantities of cocaine hydrochloride to undercover police officers in what he thought to be a discreet and inconspicuous manner. Had petitioner believed that his conduct was legal, perhaps he would have been "gone public" with his sale of cocaine hydrochloride.

Petitioner's contention that cocaine base (9041) and cocaine hydrochloride (9042) are so different that cocaine hydrochloride is not a proscribed controlled substance is ludicrous. The differing manner in which the two different forms of cocaine are introduced to the body's psyche does not

make the use or sale of one form of the drug on the other any less culpable. See petitioner's petition, pp. 21–22. It is the clear intent of the legislature of Indiana to proscribe the use of cocaine in any form. *Sherelis v. State, supra.* See also *Brown v. Duchesne, supra.* Petitioner has not shown that he was prejudiced by the state into believing that the sale, distribution or manufacturing of cocaine hydrochloride was legal. Petitioner would be self-hallucinating to believe that any such handling of cocaine hydrochloride was legal. Petitioner, who is a trained chemist and apparently served as his own expert witness at trial, cannot seriously contend that he operated under the assumption that his conduct was not proscribed by law. A mere cursory reading of the relevant Indiana statutes is sufficient to alert the most simple of laymen to the consequences of participating in this type of handling of cocaine hydrochloride. Petitioner was provided adequate notice that his conduct was proscribed by law. See *Grayned v. City of Rockford, supra.* Further, the contested statutes do not invite arbitrary and discriminating enforcement. *Id.*

This court finds that I.C. 35–48–4–1 is a statute that is not only constitutional, but one that is not vague. Such statute, in conjunction with the entire article, provides a fair warning of what conduct is proscribed. Upon this court's finding that such statute is constitutional, it now finds that such statute proscribes the sale and delivery of cocaine hydrochloride. Thus, petitioner's contention in Ground One that his actions were not proscribed by law is flawed and must fail. Petitioner's arguments pertaining to statutory construction in Ground Two must fail as well.

## IV.

■ The court will now turn to Ground Three: whether the state failed to prove each and every element of the offense charged beyond a reasonable doubt in violation of the Constitution. The essential facts are stated in one paragraph of Justice DeBruler's opinion, 498 N.E.2d at 974, as follows:

These are the facts from the record that tend to support the determination of guilt. On August 5, 1982 appellant was introduced to two undercover Elkhart City Police officers. In the early hours of August 6, 1982, appellant gave a small amount of cocaine hydrochloride to an undercover Elkhart City Police officer. This delivery resulted in Count II, delivery of a controlled substance of less than 3 grams. Later in the same day, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On September 15, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On September 24, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. On October 29, 1982, appellant sold cocaine hydrochloride to an undercover Elkhart City Police officer. These deliveries resulted in Counts I, III, IV, and V, delivery of a controlled substance in excess of 3 grams.

In *Jackson v. Virginia*, 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979), Justice Stewart stated for the court:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitution-

al right—is not one that can be so lightly abjured.

The evidence in this record is more than sufficient to establish the guilt of this petitioner of all of the charges with which he was charged by evidence beyond a reasonable doubt. Any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt as defined in *Jackson v. Virginia, supra.*

Petitioner further contends, in essence, that the jury was incapable of understanding the instructions, particularly the statutory definition of cocaine, I.C. 35–48–1–1, and such instructions misled the jury to a verdict of guilty. The detailed discussion above concerning I.C. 35–48–1–1 and other relevant statutes finds such definition to be constitutionaly sound. Under *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), this matter is not worthy of extended concern in this proceeding.

## V.

This court has thoroughly reviewed this record and the filings involved in this cause. The court might add that petitioner counsel's comments and critiques concerning opposing counsel's performance were distasteful, unrevealing and unnecessary. Such remarks are better suited for "behind closed doors" conversations with petitioner counsel's associates, and not in public federal court filings.

For each and all of the aforesaid reasons set forth in Parts I–IV, the court now finds that no basis exists or has been presented to require the granting of a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner's writ is hereby DENIED. SO ORDERED.