**JOHN BOETTCHER SEWER & EXCAVATING CO., LTD., Plaintiff,**

**v.**

**MIDWEST OPERATING ENGINEERS WELFARE FUND, et al., Defendants.**

**No. S90–564M.**

United States District Court, N.D. Indiana, South Bend Division.

Sept. 28, 1992.

William H. Fallon, Grand Rapids, Mich., for plaintiff.

Alan H. Auerbach, James M. Neuman, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff John Boettcher Sewer & Excavating Co., Ltd. ("Boettcher") seeks to enforce a settlement agreement allegedly reached between Boettcher and the Midwest Operating Engineers Fringe Benefit Funds ("Funds").[1] For the reasons that follow, the court finds that Boettcher's motion should be granted.

### I.

Boettcher originally brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Relations Management Act, 29 U.S.C. § 186(c)(5). The complaint alleged that the Funds sent Boettcher a letter that stated that Boettcher was bound by one or more collective bargaining agreements with Local Union No. 150 of the International Union of Operating Engineers ("Local 150"). The letter also claimed that Boettcher owed certain amounts to the Funds for fringe benefit contributions from 1985 to 1990.

Boettcher filed this action seeking a declaratory judgment that it was not bound

---

1. The Funds named as defendants are the Midwest Operating Engineers Welfare Fund, Midwest Operating Engineers Pension and Trust Fund, Operating Engineers Local 150 Apprenticeship Fund, and Local 150 Vacation Savings Plan.

by any collective bargaining agreement with Local 150 and, therefore, was not required to pay any fringe benefit contributions to the Funds. The Funds' answer and counterclaim contended that Boettcher was bound to several bargaining agreements and that over $91,000.00 was due for past fringe benefit contributions.

On February 24, 1992, William Fallon, counsel for Boettcher, orally communicated a settlement offer to Alan Auerbach, counsel for the Funds. Mr. Fallon confirmed that settlement offer in a letter to Mr. Auerbach dated February 27.

On March 5, Mr. Auerbach sent a copy of the settlement offer to Larry W. Bushmaker, Administrative Manager of the Funds. Mr. Bushmaker had worked with Mr. Auerbach on similar matters for nearly twelve years, and Mr. Auerbach understood that Mr. Bushmaker had the authority to make decisions on behalf of the Funds' trustees regarding the acceptance of settlement offers. Mr. Bushmaker contacted the trustees and obtained their input before making a decision in some cases; Mr. Bushmaker made the decision himself at other times.

On March 17, Mr. Bushmaker informed Mr. Auerbach that the Funds had accepted the settlement proposal. The next day Mr. Auerbach called Mr. Fallon and told him that the Funds had agreed to settle the case based upon the terms of the February 27 letter, stating, "We have a deal." Mr. Auerbach did not condition the settlement upon the approval of the Funds' trustees. Mr. Fallon prepared the settlement agreement and stipulation for dismissal, which he sent to Mr. Auerbach on April 2.

During April, however, Mr. Auerbach learned that Mr. Bushmaker had not consulted the Funds' trustees about the settlement offer, and that after several of the trustees heard about the offer, they had reservations about its prudence. In response to inquiries, Mr. Auerbach informed the trustees that the settlement had not yet been reduced to writing. He also told the trustees that if they felt the settlement

was not prudent, they could attempt to revoke their acceptance. The trustees instructed Mr. Auerbach to revoke acceptance of the settlement offer.

On April 29, Mr. Auerbach informed Mr. Fallon that there would be no settlement. Mr. Auerbach told Mr. Fallon that when the Funds' trustees learned of the settlement, they decided that it was not enough money.

## II.

The Funds argue that ERISA preempts any state or federal common law regarding settlement offers involving fringe benefit contributions due the Funds, and therefore the court must look first to ERISA. The Funds contend that Section I(a)(2) of Prohibited Transaction Class Exemption 76–1 ("PTCE 76–1")[2] governs whether, and on what terms, a multi-employer benefit fund may enter into a settlement agreement regarding delinquent contributions.

Boettcher contends that PTCE 76–1 does not apply here because PTCE 76–1, by its plain language and its stated purpose, applies only to delinquent liquidated contributions that a participating employer "owes". Boettcher claims that its settlement with the Funds was not an agreement to accept delinquent liquidated contributions that Boettcher "owed"; instead, the agreement merely settled a dispute regarding whether Boettcher "owed" any amount at all. Boettcher contends that the court must look to federal common law principles to resolve whether a settlement was reached.

Broadly stated, ERISA prohibits certain transactions between a benefit plan and a party in interest, including the lending of money or other extension of credit. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B). ERISA also authorizes the Departments of Labor and Treasury to grant exemptions for certain transactions prohibited by § 406(a). ERISA § 408(a), 29 U.S.C. § 1108(a). The Department of Labor ("DOL") and the Internal Revenue Ser-

---

**2.** The United States Department of Labor promulgated Prohibited Class Transaction Exemption 76–1, 41 Fed.Reg. 12740 (1976), pursuant to

authority granted that Department by Congress. *See* ERISA § 408(a), 29 U.S.C. § 1108(a).

vice ("IRS") promulgated such an exemption in Section 1(a)(2) of PTCE 76–1, which provides in part:

The restrictions of Sections 406(a) and 407(a) of [ERISA] shall not apply to:

\* \* \* \* \* \*

(2) Any arrangement, agreement or understanding between a multiple employer plan and any employer any of whose employees are covered by such plan, whereby the plan agrees to accept less than the entire amount of a contribution owed by such employer in satisfaction of such employer's obligation to pay the entire amount of such contribution, if the following conditions are met:

(i) Prior to entering into such an arrangement, agreement or understanding, the plan has made, or has caused to be made, such reasonable, diligent, and systematic efforts as are appropriate under the circumstances to collect such contribution in its entirety; and

(ii) The terms of such arrangement, agreement or understanding are set forth in writing and are reasonable under the circumstances based on the likelihood of collecting such contribution or the approximate expenses that would be incurred if the plan continued to attempt to collect such contribution through means other than such arrangement, agreement or understanding.

PTCE 76–1, Section I(a)(2), 41 FR 12740, CCH Pension Plan Guide, ¶ 16,602, p. 19,-825–26 (May 13, 1983).

 In construing PTCE 76–1, the court must begin with the statutory language itself. *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730, 734 (7th Cir. 1991). Words in PTCE 76–1 are to be given their plain and ordinary meaning. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir.1988). However, the court may look beyond the express language of PTCE 76–1 if that language is ambiguous. *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir.1987). In interpreting PTCE 76–1, the court must not be guided by a single sentence or member of a sentence, but it must look to PTCE 76–1 as a whole and to its object and policy. *Nu-Pulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 549 (7th Cir.1988). The court may not view PTCE 76–1 in isolation, but must ascertain its effect and application by viewing it in context with the entire act. *Sherelis v. Duckworth*, 675 F.Supp. 1144, 1148 (N.D.Ind.1987), *aff'd*, 866 F.2d 432 (7th Cir. 1988).

 The key phrase in PTCE 76–1 provides "whereby the plan agrees to accept less than the entire amount of a contribution *owed* by such employer." (Emphasis added). The word "owe" is defined as "to be bound to do or omit something, especially to pay a debt." *Black's Law Dictionary* 1105 (6th ed. 1990). At the time of the alleged settlement agreement, it was unclear whether Boettcher was "bound" or indebted to the Funds for any amount. Whether Boettcher "owed" the Funds any contributions is the precise issue in this suit. Boettcher did not "owe" the Funds as that word is used in PTCE 76–1.

Any ambiguity regarding the word "owed" is resolved by looking to the DOL and the IRS's introductory remarks to PTCE 76–1. That introduction illustrates clearly that the word "owed" applies to delinquent liquidated contributions due a multi-employer plan from a participating employer in that plan. Part A of the introductory explanation of PTCE 76–1 provides in part:

A. **Delinquent employer contributions.** An employer participating in a multiple employer plan (a "participating employer") is generally obligated under the terms of the plan or of a collective bargaining agreement to make periodic contributions to the plan. Multiple employer plans are often confronted with the problem of delinquency in participating employer contributions ... and at times one or more participating employers may be delinquent in making such contributions. In the course of collection efforts, multiple employer plans frequently delay or extend the time for payment of contributions ... where it appears that collection of the full amount due the plan would be jeopardized were

the plan to attempt to force immediate full payment.

\* \* \* \* \* \*

[I]t is the view of the Department and the Service that generally neither the failure of a participating employer in a multiple employer plan to make a contribution to the plan when the contribution is due nor the failure of the plan to collect such a delinquent contribution constitutes a prohibited transaction.... However, if the plan is not making systematic, reasonable and diligent efforts to collect delinquent contributions ... such failure to collect a delinquent contribution may be deemed to be a prohibited transaction.

PTCE 76–1, 41 FR 12740, CCH Pension Plan Guide, ¶ 16,602, p. 19,823–24 (May 13, 1983).

The DOL and IRS enacted PTCE 76–1 to resolve the issue of whether delinquencies, delays, or extensions of a participating employer's contributions to a multi-employer benefit plan were prohibited transactions under Sections 406(a) and 407(a) of ERISA and Section 4975(c)(1) of the Internal Revenue Code ("Code"). The DOL and IRS determined that such delinquencies, delays, or extensions were not *per se* prohibited transactions under ERISA or the Code.

PTCE 76–1 gives multi-employer plans flexibility in dealing with a participating employer that is unable to make a regular contribution because of the employer's financial straits. The exemption allows the plan to delay or extend payment of a participating employer's contributions in such a manner as to minimize financial harm to the participating employer while maximizing benefits to the plan participants. PTCE 76–1 applies where a participating employer and a multi-employer plan agree that a liquidated amount of contributions is owed, but the employer and the plan set up a different payment schedule because of unforeseen financial difficulties. Basically,

PTCE 76–1 allows a multi-employer plan to, in effect, lend money or extend credit in a limited circumstance to a participating employer without violating ERISA or the Code.

This case does not involve the extension or delay of a liquidated amount of contributions which Boettcher and the Funds agree is owed. Doubt exists as to whether Boettcher was a participating employer in a multi-employer plan and whether Boettcher "owes" the Funds any contributions. This suit's objective was to determine whether Boettcher was even obligated under the terms of any plan or collective bargaining agreement to make periodic contributions to the Funds. The Funds have not extended credit to Boettcher because of Boettcher's financial straits; this is not a situation where the parties agree that a liquidated amount of contributions is owed and are merely adjusting the payment schedule. The settlement between Boettcher and the Funds is not the type of arrangement or agreement covered by PTCE 76–1. PTCE 76–1 does not apply to the present case.

■ Even if PTCE 76–1 did apply, Boettcher contends that the instant motion should still be granted in its favor because the requirements of PTCE 76–1 have been fulfilled: the Funds have made reasonable, diligent, and systematic efforts to collect any contribution in its entirety,[3] the terms of the agreement are set forth in writing, and the terms are reasonable under the circumstances. The Funds claim that those requirements have not been fulfilled, and therefore the Funds could properly revoke their acceptance of the settlement agreement. The court agrees with Boettcher.

First, the record in the instant case illustrates that the Funds have taken reasonable, diligent, and systematic steps to collect any contributions due from Boettcher. The Funds have audited Boettcher's payroll records, demanded payment by letter before the instant litigation, filed a counter-

---

**3.** In its response brief, the Funds contend that PTCE 76–1 requires the Funds to make such reasonable, diligent, and systematic efforts as are appropriate under the circumstances to ensure the "prudence" of the arrangement. This

statement is incorrect. Nowhere in Section 1(a)(2) of PTCE 76–1 is the word "prudence" or "prudent" even mentioned. PTCE 76–1 requires that the Funds use such efforts "to collect such contribution in its entirety."

claim to collect the alleged contributions, and otherwise fully litigated the instant matter with experienced counsel.

Second, PTCE 76–1 requires that the terms of such agreement be "set forth in writing." The terms of the settlement agreement in the present case were set forth in the February 27 letter from Boettcher's counsel to the Funds' counsel. The language of PTCE 76–1 does not require a "signed writing", only a "writing". Further, the Funds acknowledge receiving the February 27 letter and acknowledge agreeing to its terms. Thus, the necessity and purpose behind a signed writing is not present in the instant case.

Finally, PTCE 76–1 requires that the terms of the agreement be "reasonable under the circumstances." Mr. Bushmaker, who has worked for at least twelve years on matters of this kind, thought that the settlement agreement was reasonable. Mr. Bushmaker generally makes decisions of this kind for the Funds without input from the Funds' trustees. Further, the Funds concede that they could "probably be persuaded to settle the case along the lines previously agreed to" if Boettcher would stipulate that it had a valid agreement with the Operating Engineers Union. Thus, the Funds do not challenge the amount of the settlement or the reasonableness of the settlement; instead, the Funds want to revoke their settlement because Boettcher will not acknowledge what the Funds contend to be a valid agreement with a union.

If compliance with PTCE 76–1 is a prerequisite to settlement, then its requirements have been met. Nothing in PTCE 76–1, however, addresses whether a multiemployer plan may revoke a settlement agreement agreed upon pursuant to PTCE 76–1.

### III.

 Because no specific ERISA provision governs whether the Funds could properly revoke the settlement agreement, the court must look to federal common law principles to decide the instant matter. *Senkier v. Hartford Life and Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir.1991);

*Fox Valley and Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). Public policy favors out of court settlements, even in the context of suits arising under ERISA. *Leavitt v. Northwestern Bell Telephone Co.*, 921 F.2d 160, 162 (8th Cir.1990) ("We will not assign to Congress 'the intent of making an unreasonable law [ERISA]—one requiring terminal litigation, rather than favoring settlements as does the general law.'"); *Anita Foundations v. ILGWU National Retirement Fund*, 710 F.Supp. 983 (S.D.N.Y.1989), *aff'd*, 902 F.2d 185 (2nd Cir.1990) (involving ERISA § 4225; to permit the defendant multi-employer pension plan to avoid the settlement agreement reached with an employer would be to seriously undermine the strong public policy favoring out of court settlements).

In the instant case, Mr. Auerbach, counsel for the Funds, sent the settlement proposal to Mr. Bushmaker, the Administrative Manager for the Funds. Mr. Bushmaker informed Mr. Auerbach that the Funds had accepted the settlement proposal. The next day Mr. Auerbach called Mr. Fallon and told him that the Funds had agreed to settle the case based upon the terms of the February 27 letter, stating, "We have a deal."

It is undisputed that Mr. Bushmaker generally made the decision whether to accept a settlement offer on behalf of the Funds. In its response brief, the Funds stated that "Mr. Bushmaker generally has the authority to make decisions of behalf of the Trustees with respect to the acceptance of settlement proposals of this kind." Def. Resp., p. 1. The Funds also concede that "a proposal was made and that persons who fully believed they were in authority to do so communicated that acceptance to counsel for the Plaintiff. Defendants do not contend that the persons who communicated approval were not authorized to do so." Def.Resp., pp. 2–3. Thus, whether Mr. Auerbach or Mr. Bushmaker had the express or apparent authority to settle the matter is not an issue.

The Funds contend, without citation to authority, that based upon common law principles, Boettcher's motion should not be granted because the parties contemplated the consummation of the settlement through a written agreement. The argument is unavailing for two reasons. First, even an oral agreement for settlement is enforceable under federal common law. *Taylor v. Gordon Flesch Co., Inc.*, 793 F.2d 858, 862 (7th Cir.1986) (under federal law, oral settlement agreements are enforceable); *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454 (7th Cir.1986) (federal law does not require that the settlement be reduced to writing). Second, there was a written settlement to which the Funds agreed (the February 27 letter), albeit unsigned by the parties.

### IV.

Accordingly, for the foregoing reasons, the plaintiff's motion to enforce the settlement agreement in accordance with the terms in the letter dated February 27, 1992 is GRANTED.

SO ORDERED.