Jess A. RODRIGUES, Plaintiff–Appellant,

v.

Alexis M. HERMAN,* Secretary of Labor; U.S. Department of Labor, Defendants–Appellees.

No. 96–15387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1997.

Decided Aug. 19, 1997.

---

* Alexis M. Herman is substituted for her predecessor, Robert B. Reich, as Secretary of Labor.

Fed. R.App. P. 43(c)(1).

Anthony T. Karachale, Horan, Lloyd, Karachale, Dyer, Schwartz, Law & Cook, Monterey, CA, for Plaintiff–Appellant.

**1354**

Alexander Fernandez and Suzanne Windle, United States Department of Labor, Washington, DC, for Defendants–Appellees.

Before: HUG, Chief Judge, CHOY and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

From 1978 to 1991, Jess Rodrigues was the co-trustee of two employee benefit plans (the "Plans") maintained by California Housing Securities, Inc. He was also an employee of the company and a participant in the Plans. The Plans, which have been terminated, were governed by ERISA.[1]

In 1983, Rodrigues became one of the five partners in the Dublin Land Company ("DLC"). DLC acquired a large development property for approximately $2.5 million; DLC paid $500,000 down and signed a promissory note for the remainder. Rodrigues paid ten percent of the downpayment personally, as well as ten percent of all note payments and property expenses thereafter. Another ten percent came from the Plans' funds. Rodrigues contends that he invested in DLC both individually and on behalf of the Plans. DLC's recorded Statement of Partnership, however, listed only Rodrigues and four other individuals, and did not indicate that the Plans owned any interest in the partnership or that Rodrigues was acting in any capacity other than as an individual. In fact, the Statement of Partnership recited: "The Partners named in this Statement are all of the Partners." Although one of Rodrigues' co-trustees recalls that shortly after DLC's property purchase, Rodrigues executed a document "confirming the Plans' interest in the Dublin land," neither Rodrigues nor his co-trustee was able to locate this document.

In 1990, the Secretary of Labor (the "Secretary") filed a complaint against Rodrigues and his co-trustees, alleging they had violated the prohibited transaction provisions of ERISA by causing the Plans to invest money in a partnership in which the Plans had no legal interest, but in which Rodrigues did. The suit was settled by a consent decree, in which the defendants neither admitted nor denied the allegations of wrongdoing made by the Secretary. As part of the settlement, Rodrigues agreed to execute any documents necessary "to effect the clear Plans' title in the DLC partnership." Rodrigues then executed an Assignment of Partnership Interest (the "Assignment"), assigning the Plans a ten percent interest in DLC.

In the consent decree, the Secretary reserved the right to assess a civil penalty under ERISA § 502(*l*) to amounts recovered under the settlement agreement "to the extent that [the] applicable recovery amount is based on the amount actually paid to the Dublin Land Company by the Plans, beginning on or after December 19, 1989" (the effective date of the § 502 amendment). The Secretary did assess such a penalty against Rodrigues in the sum of $32,999.80, and also denied his request for a waiver of the penalty.

Rodrigues then filed this action in district court to challenge the penalty as exceeding the Secretary's statutory authority. The district court granted summary judgment to the Secretary, holding that: 1) § 502(*l*) requires the Secretary to prove a breach of fiduciary duty, 2) the undisputed facts established that such a breach occurred in this case, and 3) the assignment of the ten percent partnership interest constituted an "applicable recovery amount" to which the statutory twenty percent penalty would apply. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

---

**1.** The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Rodrigues concedes that at all relevant times he was a fiduciary to the Plans pursuant to 29 U.S.C. § 1002(21).

### Standard of Review

 A grant of summary judgment is reviewed de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Likewise, the district court's "interpretation of ERISA, a federal statute, is a question of law subject to de novo review." *Long v. Flying Tiger Line, Inc.*, 994 F.2d 692, 694 (9th Cir.1993).

### Discussion

ERISA § 502(*l*), civil penalties on violations by fiduciaries, provides in pertinent part:

(1) In the case of [ ] any breach of fiduciary responsibility under (or other violation of) part 4 by a fiduciary . . . the Secretary shall assess a civil penalty against such fiduciary . . . in an amount equal to 20 percent of the applicable recovery amount.

(2) For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary . . . with respect to a breach or violation described in paragraph (1)-

(A) pursuant to any settlement agreement with the Secretary, or

(B) Ordered by a court to be paid by such fiduciary . . . to a plan . . . in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5).

29 U.S.C. § 1132(*l*).

### I. Necessity of Proving Fiduciary Breach

 The Secretary contends that although § 502(*l*) says that the penalty shall be assessed "in the case of any breach of fiduciary responsibility under (or other violation of) part 4," the Secretary need not prove that there has been a breach when it has secured a settlement agreement with a party, even if, in that settlement agreement, the party does not admit it has breached any duty.[2] The interpretation of this provision is a question of first impression.

While we agree with the Secretary that Congress' intent in enacting § 502(*l*) was to strengthen enforcement and deter violations of fiduciary duties, we do not believe the statute contemplates punishment where no violation has occurred. The language of the statute permits imposition of the penalty only "in the case of any breach of fiduciary responsibility." 29 U.S.C. § 1132(*l*)(1). The Secretary argues that the words "in the case of any breach" are merely an instruction "to the Secretary regarding when to assess the penalty; they are not an element of the penalty assessment itself." Under this reading, however, the Secretary alone would determine when the fiduciary breach occurred that triggers the statute. If this were the case, the Secretary would have unchecked authority to impose a penalty, so long as some recovery had been gained through a settlement agreement.[3]

The Secretary argues that requiring it to prove a fiduciary breach would obviate any savings it gained by settling a case without a full-blown trial. This argument assumes that a trial would be necessary to prove a fiduciary breach. When seeking to impose the penalty, however, the facts (already developed in the course of settlement negotiations) could establish a breach as a matter of law, as they do in this case. Alternatively, no

---

**2.** Rodrigues incorrectly argues that the Secretary cannot raise this issue again on appeal because the Secretary did not cross-appeal. There is no need to cross appeal if the appellee argues in support of the district court decision, but also offers alternative grounds for affirmance. *See Massachusetts Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) ("[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it."); *see also*

*United States v. One 1964 MG, Serial No. 64GHN3L34408*, 584 F.2d 889, 890 (9th Cir. 1978).

**3.** One can imagine a situation in which no breach occurred, but a fiduciary agreed to a settlement to avoid an expensive legal battle. Under the Secretary's proposed reading, because of the enforceable settlement agreement, the fiduciary would be subject to an additional twenty percent penalty even though there was no violation.

trial would be required if the Secretary settled the case and required a sentence in the consent decree admitting a violation occurred.

In sum, although it would certainly be easier for the Secretary to impose a penalty if it were not required to prove a breach of fiduciary duty, the language Congress employed does not make it quite that simple. The district court correctly interpreted § 502(*l*) to require the Secretary to establish as a preliminary matter that a breach of Title IV has occurred.

## II. Rodrigues' Breach

Title IV of ERISA describes a fiduciary's general duties and also specifically prohibits certain transactions. Section 404, which describes the general duties, is based on the common law of trusts, since a plan's assets are held in trust. *See Acosta v. Pacific Enterprises,* 950 F.2d 611, 618 (9th Cir.1991). Section 404(a)(1) requires the fiduciary to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Section 404(a)(1)(B) requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

In this case, at a minimum, Rodrigues failed to properly designate that half of his investment in DLC was not as an individual but in his capacity as trustee of the Plans.[4] Even viewing the facts in the light most favorable to Rodrigues, it is clear he breached a common law trust duty to keep trust property separate and clearly designate such property as property of the trust (a failure to segregate funds or "earmark" the funds). *See* Restatement (Second) of Trusts § 179

(1959). This type of breach puts a trust at risk because the personal creditors of the trustee could reach the asset. *Id.* § 179 cmt. d. Moreover, when a trustee puts an asset in his name individually, it creates the potential for the trustee to claim that the asset is his own if it increases in value, but claim the investment was made as a trustee if it decreases in value. *Id.* § 205 cmt. f.

■ As we have previously recognized, Congress intended § 404 to use " 'the common law of trusts to define the general scope of [a fiduciary's] authority and responsibility.' " *Acosta,* 950 F.2d at 618 (alteration in original) (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985)). Requiring trustees to adhere to the common law rule of segregating and earmarking trust assets is consistent with "Congress' overriding goal of ensuring 'the soundness and stability of plans with respect to adequate funds to pay promised benefits.' " *Id.* (quoting 29 U.S.C. § 1001(a)). We therefore hold that Rodrigues' breach of the common law duty to segregate and earmark funds was also a breach of the prudent man rule of § 404(a)(1)(B). *See Professional Helicopter Pilots Ass'n v. Denison,* 804 F.Supp. 1447, 1453–54 (M.D.Ala.1992) (breach of ERISA fiduciary duty where fiduciaries placed employee deductions in general corporate account rather than separate trust fund); *Corley v. Hecht Co.,* 530 F.Supp. 1155, 1163 (D.D.C.1982) (breach of ERISA fiduciary duty where fiduciary was not careful about keeping company money distinguished from plan assets). By failing to abide by such a fundamental trust law duty, Rodrigues failed to exercise the care and diligence of "a prudent man acting in a like capacity and familiar with such matters." 29 U.S.C. § 1104(a)(1)(B).

---

4. By viewing the facts in the light most favorable to Rodrigues, we assume that he saw a good investment opportunity in DLC for both himself and for the Plans, and that his use of the Plans' money to invest in the DLC was solely for the benefit of the Plans. Were we to take a less generous view, we might conclude that Rodri-

gues used the Plans' money to purchase for himself a 20% interest in DLC. If that were the case, he would have been using plan assets for his own interests, rather than for the sole benefit of the Plans, in violation of two prohibited transactions provisions, § 406(a)(1)(D) and (b)(1), and the exclusive benefit rule of § 404(a)(1)(A).

### III. The Applicable Recovery Amount

 The parties also dispute the meaning of "applicable recovery amount" in § 502(*l*) as applied to this case. As noted earlier, the interpretation of this statute is an issue of first impression. The Supreme Court, however, has commented on the meaning of this particular phrase in passing, when deciding whether ERISA authorizes suits for money damages against nonfiduciaries. *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 259–261, 113 S.Ct. 2063, 2069–70, 124 L.Ed.2d 161 (1993). The Court rejected the petitioners' argument that all "appropriate equitable relief" under § 502(a)(3) & (5) must include monetary damages against a nonfiduciary or else there would be no "applicable recovery amount" to assess the § 502(*l*) penalty against. *Id.* at 260, 113 S.Ct. at 2070. The Court reasoned that equitable relief could include restitution of ill-gotten plan assets or profits, and this would provide an "applicable recovery amount" to calculate the penalty. *Id.* at 260–61, 113 S.Ct. at 2070–71. The Court noted that the Secretary's interpretation of § 502(*l*) in a proposed regulation was consistent with this approach, since the regulation indicated that when a court awards equitable relief, as opposed to monetary damages, a § 502(*l*) penalty will be assessed only if the award involves the transfer to the plan of money or property. *Id.* at 261, 113 S.Ct. at 2071 (citing proposed reg. 29 C.F.R. § 2560.5021-1).

Rodrigues argues essentially that because he did not "pay" the Plans out-of-pocket, there was no "recovery" as a matter of law. We believe the Supreme Court's reasoning in *Mertens* is contrary to Rodrigues' position. The Court recognized that even in the absence of a monetary damage award, equitable transfers of assets or property can constitute an "applicable recovery amount" against which the § 502(*l*) penalty may be assessed. *Id.* In this case, in connection with the consent decree, Rodrigues "assigned to [the Plans] all right, title and interest in and to a ten percent (10%) partnership interest in Dublin Land Company, a general partnership, and all distributions, capital account, profits and proceeds attributable thereto." [5] Even Rodrigues characterizes the Assignment as the "means by which the Dublin Land interest was *distributed*" to the Plans. (emphasis added). We agree with the Secretary and the district court that the Assignment gave the Plans an enforceable economic interest in DLC, and that Rodrigues' transfer of this interest to the Plans constitutes an "applicable recovery amount" for purposes of § 502(*l*).

AFFIRMED.

---

**5.** A ten percent interest in the DLC was valued at $1,050,000 at the time Rodrigues executed the Assignment. The Secretary, however, calculated Rodrigues' penalty only on the $164,992.02 in payments the Plans actually made to DLC after December 19, 1989 (the effective date of the § 502 amendment), for a penalty of $32,999.80.