**Roy H. HUFFER and Robert H. Huffer, Plaintiffs,**

v.

**Alexis M. HERMAN, Secretary of the United States Dep't of Labor, et al., Defendants.**

No. C2–00–897.

United States District Court, S.D. Ohio, Eastern Division.

April 9, 2001.

Charles Halter Lease, Ricketts & Onda Co. LPA-2, Columbus, OH, for plaintiffs.

W. Iris Barber, U.S. Dept. of Labor, Plan Benefits Security Division, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiffs Roy and Robert Huffer seek declaratory and injunctive relief stemming from Defendants' imposition of a civil penalty on Plaintiffs for breach of fiduciary duty as co-trustees of a pension plan and profit sharing plan. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, Plaintiffs seek judicial review of Defendants' decision to impose the civil penalty and denial of their petition to waive or reduce the penalty. This matter is currently before the Court on Plaintiffs' Motion for Summary Judgment (Record at 7) and Defendants' Cross Motion for Summary Judgment (Record at 8).

### I. Facts

The facts of this case are essentially undisputed. Plaintiffs, Roy and Robert Huffer, are brothers and are attorneys

with Huffer & Huffer, L.P.A. ("Huffer & Huffer"), a general practice law firm in Circleville, Ohio. They are also co-trustees of their firm's Money Purchase Pension Plan and Trust and Profit Sharing Plan and Trust (the "plans"). Both plans are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

In December of 1995, Todd and Lisa Huffer, Roy Huffer's son and daughter-in-law, approached him for a $250,000 loan so that they could purchase the Dairy Queen in Circleville. Todd and Lisa formed a corporation called T & L Enterprises, Inc. ("T & L"). Roy Huffer told them that he did not have sufficient liquid assets to personally loan them the money, but that they may be able to borrow it from the law firm's pension plan and profit sharing plan. Huffer & Huffer does not practice ERISA law. For many years, whenever questions concerning the plans had arisen, Huffer & Huffer had relied on the advice of attorney Marcia Dowdell and her firm, Pension Retirement Planning Co., Inc. ("PRP"), an entity dedicated to providing services to plans governed by ERISA. Therefore, when Roy Huffer was approached about the loan, he instructed his brother Robert to consult Ms. Dowdell to determine whether it would be proper to loan T & L the necessary funds from the plans. Ms. Dowdell was aware that T & L was owned by Roy Huffer's son and daughter-in-law. Ms. Dowdell not only assured them that the loans were proper, but also temporarily advanced T & L the funds from her own account so that T & L could purchase the Dairy Queen more expeditiously. (Roy Huffer Aff. ¶¶ 3–11).

On or about December 15, 1995, Plaintiffs authorized a $250,000 loan to T & L, $125,000 from the pension plan and another $125,000 from the profit sharing plan. The loans were personally guaranteed and were secured by both a second mortgage on the property and a second security agreement covering the Dairy Queen equipment. The interest rate on the loans was 10% and repayment was to begin in May of 1996. T & L, however, failed to repay the loans in a timely manner.

Defendant Pension and Welfare Benefits Administration ("PWBA"), the executive agency within the United States Department of Labor ("DOL") charged with enforcing ERISA, began an investigation into the loans. On June 9, 1999, Joseph Menez of PWBA sent Plaintiffs a letter claiming that, based on the agency's investigation, it appeared that Plaintiffs, as fiduciaries of the plans, had violated several provisions of ERISA in connection with the loans. The stated purpose of the letter was "to advise you of our findings and to give you an opportunity to comment before the Department determines what, if any, action to take." (Ex. 1 to Pls.' Mot. Summ. J.).

Menez stated that Todd and Lisa Huffer were each a "party in interest" to the plans within the meaning of ERISA § 3(14). He also claimed that Plaintiffs had violated ERISA §§ 401(a)(1)(A) and (B), 406(a)(1)(B) and (D), and 406(b)(1) and (2) by failing to effectively evaluate and appraise the value of the collateral pledged to secure the loan and failing to enforce the loans' repayment terms. (*Id.*). Menez did not set any deadline for repaying the loans, but instead invited Plaintiffs to submit a proposed plan for correcting the alleged violations. He stated that Plaintiffs would remain in violation of ERISA until his office received documentation that the loans had been reversed and all accrued interest had been restored to the plans. Menez notified Plaintiffs that their failure to correct the violation could result in legal action being taken against them by the Department and plan participants or their beneficiaries. Menez further stated that:

If you take proper corrective action the Department will not bring a law suit with regard to these issues. However, ERISA section 502(*l*) requires the Secretary of Labor to assess a civil penalty against a fiduciary who breaches a fiduciary responsibility under, or commits any other violation of, part 4 of Title I of ERISA or any other person who knowingly participates in such breach or violation. The penalty under section 502(*l*) is equal to 20 percent of the "applicable recovery amount," a term which means any amount recovered from a fiduciary or other person with respect to a breach or violation either pursuant to a settlement agreement with the Secretary or ordered by a court to be paid in a judicial proceeding instituted by the Secretary.

(*Id.*). In a footnote, Menez stated that the Department "may, in its sole discretion, waive or reduce the penalty if it determines in writing that the fiduciary or knowing participant in the breach acted reasonably and in good faith ..." (*Id.*). He also set forth the proper procedure for applying for a waiver or reduction of the civil penalty.

In response to Menez's letter, Plaintiffs promptly submitted their proposed plan for repaying the loans in full. (Ex. 2 to Pls.' Mot. Summ. J.). The loans were repaid by July 21, 1999 and neither plan suffered any loss as a result of the alleged ERISA violations. On July 28, 1999, Menez mailed another letter to Plaintiffs stating that since they had taken the agreed-upon corrective action, the Department would take no further action except the imposition of civil penalties as required by ERISA § 502(*l*). He determined that the "applicable recovery amount" was $232,521.58, the amount of the outstanding principal and interest that Plaintiffs had repaid to the plans. The civil penalty imposed, twenty percent of that amount, was

therefore $46,504.32. Menez told Plaintiffs that they had sixty days to pay the penalty or petition for a waiver or reduction. (Ex. 4 to Pls.' Mot. Summ. J.).

On September 24, 1999, Plaintiffs timely filed a petition requesting a waiver of the civil penalty. (Ex. 5 to Pls.' Mot. Summ. J.). They claimed that they acted reasonably and in good faith to adequately safeguard the interests of the participants and beneficiaries of the two plans, that they reasonably relied on the professional advice of a third party, and that when notified of the breach of fiduciary duty, they promptly corrected the violation. On November 1, 1999, Ivan Strasfeld of the Office of Exemption Determinations of the PWBA notified Plaintiffs that the Department had tentatively decided not to waive or reduce the civil penalty previously imposed. (Ex. 8 to Pls.' Mot. Summ. J.). At Plaintiffs' request, a telephone conference was held on December 7, 1999.

On March 15, 2000, Plaintiffs were notified of the Department's final determination not to grant the petition for waiver or reduction of the penalty. (Ex. 10 to Pls.' Mot. Summ. J.). Strasfeld again cited Plaintiffs' failure to appraise the value of the collateral and their failure to enforce the loan repayment terms. In addition, he noted Plaintiffs' failure to demonstrate the presence of adequate safeguards to protect the plans' interests, their failure to demonstrate that they took the necessary measures to apprise themselves of their responsibilities as ERISA fiduciaries, and their failure to correct the violations until after the Department had concluded its investigation.

■ Pursuant to the Administrative Procedure Act, Plaintiffs then filed this lawsuit against Defendants, Alexis Herman, Secretary of the United States Department of Labor, the Department of Labor, and PWBA. Plaintiffs claimed that Defendants had exceeded their statutory

authority by imposing the civil penalty for breach of fiduciary duty. They also claimed that Defendants' decision to impose the civil penalty was unreasonable, arbitrary and capricious, and an abuse of discretion. Both parties have filed motions for summary judgment.[1]

## II. Discussion

### A. Judicial Review Under the Administrative Procedure Act

The Administrative Procedure Act ("APA") provides, in pertinent part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The statute also provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > (B) contrary to constitutional right, power, privilege, or immunity;

> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> > (D) without observance of procedure required by law;
> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> > (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Plaintiffs ask this Court to hold unlawful and set aside the civil penalty imposed on them because Defendants acted in excess of statutory authority, and because, under the circumstances, Defendants' imposition of a civil penalty was unreasonable, arbitrary and capricious, and an abuse of discretion which was not in accordance with law and which was without observance of procedure required by law.

■ The Court first notes that, while Defendants' decision to impose a civil penalty on Plaintiffs is subject to judicial review under the APA, their denial of Plaintiffs' request for a waiver or reduction of that civil penalty is not.[2] The APA does

---

1. The parties have filed cross-motions for summary judgment. However, where a court is asked to undertake judicial review of an agency action under the APA, a motion for summary judgment makes no procedural sense because there are no factual issues to submit to a jury, only a record to be reviewed by the Court. Technically, the parties should have filed a motion for judgment on the pleadings, seeking either reversal or affirmance of the agency's decision. *CDI Information Services, Inc. v. Reno,* 101 F.Supp.2d

546, 547 n. 2 (E.D.Mich.2000). Nevertheless, the Court will examine the arguments presented as they relate to its review of the Department of Labor's imposition of the civil penalty.

2. Plaintiffs compare their case to another case in which the Department of Labor granted a waiver of a civil penalty imposed for a breach of fiduciary duty. *In the Matter of Cornelius C. Rose Associates, Inc.,* 53 Fed.Reg. 18927 (May 25, 1988): Prohibited Transac-

not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The ERISA provision governing petitions for waiver or reduction of the civil penalty states, "[t]he Secretary may, *in the Secretary's sole discretion,* waive or reduce the penalty ..." 29 U.S.C. § 1132(*l*)(3)(emphasis added). In *Rodrigues v. Reich,* No. Civ. 94–20517 SW, 1996 WL 37794 (N.D.Cal. Jan.25, 1996), *aff'd,* 121 F.3d 1352 (9th Cir.1997), as here, the Department of Labor had alleged that a pension plan trustee had breached his fiduciary duty. After the parties entered into a consent decree, the Secretary of the Department assessed a civil penalty against Rodrigues for breach of fiduciary duty, and denied Rodrigues's request for a waiver. Rodrigues challenged the penalty, claiming that the Secretary had acted in excess of his statutory authority. The district court held that the Secretary had established a breach of fiduciary duty and an applicable recovery amount, and therefore, the civil penalty was properly imposed. *Id.* at *3–4. In response to Rodrigues's argument that the penalty should have been waived because he had acted reasonably and in good faith, the court held:

> A determination of reasonableness and good faith is undertaken by the Secretary as part of the administrative waiver procedure pursuant to § 502(*l*)(3)(A), 29 U.S.C. § 1129(*l*)(3)(A). Rodrigues has already exhausted his rights under this provision. No judicial review is permit-

tion Exemption 88–67, 53 Fed.Reg. 26910 (July 15, 1988). Rose owned a consulting firm. Relying on erroneous legal advice, he had entered into a prohibited transaction as trustee of an ERISA plan. As soon as he became aware of the violation, he immediately took steps to correct it and the plan suffered no loss. After the Department imposed a civil penalty, Rose applied for, and was granted, a waiver, based on his reasonable and good faith reliance on the erroneous legal advice. In the Court's view, because the De-

ted because § 502(*l*)(3) expressly commits the decision on a waiver to "the Secretary's sole discretion". *See* Administrative Procedure Act § 701(a)(2), 5 U.S.C. § 701(a)(2)(no judicial review of agency actions that are "committed to agency discretion by law".); *United States v. Morris,* 10 Wheat. 246, 23 U.S. 246, 6 L.Ed. 314 (1825)(no judicial review of Secretary of Treasury's decision not to waive penalty).

*Id.* at *5.

■ The Court's review of Defendants' decision to impose the civil penalty is fairly narrow and this Court is not "empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on unrelated grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The agency's action may not be set aside unless it is "unwarranted in law or ... without justification in fact." *Butz v. Glover Livestock Commission Co., Inc.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973).

## B. Defendants Exceeded Their Statutory Authority in Imposing the Civil Penalty

The section of ERISA which authorizes the imposition of civil penalties on fiduciaries who breach their fiduciary duties reads as follows:

(1) In the case of—

partment's decision to deny the waiver petition is not subject to judicial review, Plaintiffs' citation to *Rose* is inapposite. However, the Court also notes that *Rose* is factually distinguishable. Mr. Rose was not an attorney; Plaintiffs are, and Defendants did not abuse their discretion in holding Plaintiffs to a higher standard. In addition, Mr. Rose was the sole participant in his plan so his were the only assets at risk. Plaintiffs, on the other hand, put not only their own assets at risk, but also those of other law firm employees.

(A) any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or

(B) any knowing participation in such a breach or violation by any other person,

the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.

(2) For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary or other person with respect to a breach or violation described in paragraph (1)—

(A) pursuant to any settlement agreement with the Secretary, or

(B) ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5) of this section.

(3) The Secretary may, in the Secretary's sole discretion, waive or reduce the penalty under paragraph (1) if the Secretary determines in writing that-

(A) the fiduciary or other person acted reasonably and in good faith, or

(B) it is reasonable to expect that the fiduciary or other person will not be able to restore all losses to the plan (or to provide the relief ordered pursuant to subsection (a)(9) of this section) without severe financial hardship unless such waiver or reduction is granted . . .

29 U.S.C. § 1132(*l*).

■ An imposition of a civil penalty under this statute is proper only if: (1) there was a breach of fiduciary duty; (2) there was an applicable recovery amount; and (3) the money was recovered pursuant to a settlement agreement or a court order. *Citywide Bank of Denver v. Herman,* 978 F.Supp. 966 (D.Col.1997). Plaintiffs con-

tend that Defendants cannot satisfy any of these elements.

**1. Plaintiffs Breached Their Fiduciary Duty**

■ Under ERISA, it is unlawful for a plan fiduciary to lend money from a covered plan to a "party in interest" or to transfer money from the plan to a party in interest for that party's use or benefit. 29 U.S.C. § 1106(a)(1)(B) & (D). A "party in interest" includes a fiduciary's lineal descendants and spouses of lineal descendants. 29 U.S.C. § 1002(14)(F) & (15). Todd and Lisa Huffer clearly fall within this definition since they are Roy Huffer's son and daughter-in-law. Therefore, the loan of money from the employee benefit plans to T & L constituted a breach of fiduciary duty.

■ Plaintiffs claim that their decision to seek the advice of PRP, a third party professional ERISA expert, and their reasonable, good faith reliance on that advice, insulates them from a finding that they breached any fiduciary duty. However, as Defendants note, while the civil penalty imposed may be reduced or waived if the fiduciaries acted in good faith, there is no "good faith" exception to ERISA's fiduciary provisions. 29 U.S.C. § 1106(a) sets forth certain transactions that are prohibited *per se*. Plaintiffs clearly breached their fiduciary duties as co-trustees by authorizing the loans from the plans to T & L. The Court also notes that additional breaches of fiduciary duty occurred after the loan was made. For example, when T & L fell behind in its loan payments, Plaintiffs made no effort to remedy the situation to protect the plan assets.

**2. There Was An "Applicable Recovery Amount"**

■ Plaintiffs next argue that since all of the money loaned to T & L was repaid

to the plans with interest, there was no monetary loss and, therefore, no "applicable recovery amount." However, the "applicable recovery amount" is measured by how much money that had been at risk as a result of the fiduciaries' actions was ultimately recovered. *See Citywide Bank*, 978 F.Supp. at 974. In this case, as a result of Plaintiffs' actions, $232,521.58 was still at risk at the time Defendants recovered the money for the plans. This amount, the outstanding principal and interest due on the loans, is, therefore, the "applicable recovery amount."

### 3. There Was No Settlement Agreement or Court Order

■ Even though Plaintiffs breached their fiduciary duty as trustees of the plans, and even though Defendants recovered money that was at risk, unless that money was recovered pursuant to a settlement agreement between the fiduciaries and the Secretary or as the result of a court order, the imposition of a civil penalty is not authorized by statute. 29 U.S.C. § 1132(*l*)(2)(A) & (B). In this case, there is no dispute that no court order existed. The only remaining question is whether there was a settlement agreement between Plaintiffs and the Secretary of Labor.

■ Congress has not defined the term "settlement agreement" as it is used in the civil penalty provision of ERISA, so this Court must give the term its usual meaning. A settlement agreement is a type of contract. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992). The burden of establishing the elements of a contract is on the party asserting the existence of one. *See Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726, 732 (Ohio Ct.App.1998); *Cuy-*

*ahoga County Hosps. v. Price*, 64 Ohio App.3d 410, 415 581 N.E.2d 1125, 1128 (1989) (proponent of an express contract must prove the existence of an agreement). Since Defendants are asserting the existence of a settlement agreement, they have the burden of establishing the elements of a contract. Although no formal, written settlement agreement is required, the absence of one makes Defendants' burden in this case somewhat more difficult. In such a context, Defendants must establish by clear and convincing evidence that the parties entered into an agreement to resolve all issues between them. *Anschutz v. Radiology Assoc. of Mansfield, Inc.*, 827 F.Supp. 1338, 1343 (N.D.Ohio 1993). They have failed to meet that burden.

■ Defendants contend that the exchange of letters between the parties constituted a valid settlement agreement, whereby Plaintiffs agreed to repay the loans in exchange for Defendants' promise not to file suit against Plaintiffs for breach of fiduciary duty. Defendants claim that their June 9, 1999 letter was an offer and that a unilateral contract was created when Plaintiffs accepted the offer by performing.[3] Plaintiffs disagree. They claim that there was no definite "offer," and that their decision to voluntarily comply with Defendants' suggested course of action in order to avoid a potential lawsuit was not an "acceptance."

■ Although the parties have not addressed the choice of law issue, the Court notes that because this case arises under federal law, federal common law principles, rather than Ohio law, will determine whether a valid settlement agreement exists. *See John Boettcher Sewer & Excavating Co., Ltd. v. Midwest Operating En-*

---

**3.** A unilateral contract is one in which the promisor receives no promise as consideration for his or her own promise; instead, the offer invites the offeree to accept by rendering performance which is entirely optional. *Bretz v. Union Central Life Ins. Co.*, 134 Ohio St. 171, 174–75, 16 N.E.2d 272, 274 (1938).

*gineers Welfare Fund,* 803 F.Supp. 1420, 1425 (N.D.Ind.1992)(because no specific ERISA provision governed the issue, the court must look to federal common law principles); *Sheet Metal Workers Local 137 v. Vic Construction Corp.,* 825 F.Supp. 463, 466 (E.D.N.Y.1993)("federal common law should govern the validity of settlement agreements resolving ERISA disputes").

▮ Nevertheless, the rules governing contract formation are so universal and well-established that the outcome in this case would be the same under either federal or state law. The basic elements of contract formation are an offer and acceptance. Restatement (2d) of Contracts § 22 (1981). A valid settlement agreement also requires a meeting of the minds. *See Rulli v. Fan Co.,* 79 Ohio St.3d 374, 376, 683 N.E.2d 337, 338–39 (1997). Defendants must first show that there was a valid offer. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (2d) of Contracts § 24 (1981). An offer "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Id.* at § 33(1). Where future essential terms are yet to be determined, there is no definite offer and therefore no contract. *See General Motors Corp. v. Keener Motors,* 194 F.2d 669, 675–76 (6th Cir.1952).

In this case, the June 9, 1999 letter, which Defendants claim constituted their offer for a unilateral contract, was flawed in several respects and cannot be construed as a definite offer. The letter contained the following language:

Based on the facts gathered in this investigation, and *subject to the possibility that additional information may lead us to revise our views,* it *appears* that, as fiduciaries, you *may* have violated several provisions of ERISA. The purpose of this letter is to advise you of our findings and to give you an *opportunity to comment* before the Department determines *what, if any, action* to take ... It is *our view* that your failure to effectively evaluate and appraise the value of the collateral pledged to secure this loan, the Plan's loan to T & L Enterprises, Inc., and your failure to enforce repayment terms thereafter constitute violations of ERISA ... *In our view,* for the reasons cited above, you are in violation of ERISA and will remain so until: 1) the prohibited loan from the Plan to T & L Enterprises, Inc. is reversed and all accrued interest thereon to date restored to the Plans and 2) documentation of the above corrections is provided to this office. We *invite* you to discuss with us immediately how this violation *may* be corrected and the losses restored to the Plan ... We have provided the foregoing statement of *our views* to *help you evaluate* your obligations as a fiduciary within the meaning of ERISA. Your failure to correct the violation and restore losses *may* result in the referral of this matter to the Office of the Solicitor of Labor for *possible* legal action.... We hope this letter will be *helpful* to you in the execution of your fiduciary duties ... Please *advise* me ... what action you *propose* to take ...

(Ex. 1 to Pls.' Mot. Summ. J.)(emphasis added). Significantly, the letter does not set forth the amount that must be repaid to the plans and sets no deadline for repayment. It simply asks Plaintiffs to submit a proposed plan. In the Court's view, the omission of these essential terms precludes a finding that this was a definite offer. In addition, nowhere in the letter does Menez definitively state that Plaintiffs have, in fact, breached their fiduciary duty, or that PWBA will file suit against

them if they fail to comply with the suggested course of action.

In *Citywide Bank*, a trustee of a profit-sharing plan filed suit seeking to enjoin the Department of Labor from enforcing a civil penalty imposed against him for a breach of fiduciary duty. As in the case at hand, the parties had exchanged a series of letters, which the Department of Labor claimed constituted a settlement agreement. The court, however, found that there was no settlement agreement. 978 F.Supp. at 979. Citing precatory language nearly identical to that used in the letter Menez sent to Roy and Robert Huffer, the court found that there was "no definite offer upon which the parties could have had a meeting of the minds." *Id.*

Defendants attempt to distinguish *Citywide* on its facts. They claim that their June 9, 1999 letter clearly stated that Plaintiffs were in violation of ERISA. The Court disagrees. It has searched the June 9, 1999 letter and fails to find any such definite statement. The letter notes that Plaintiffs may have violated their fiduciary duties, but clearly states that Defendants have not yet determined what action to take. Providing Plaintiffs with an "opportunity to comment" and an invitation to submit a proposed plan to remedy the alleged violations can hardly be construed as a definite offer.

Since there was no definite offer, the fact that Plaintiffs responded to this letter by voluntarily submitting a proposed plan to remedy the alleged violations, and by repaying the loans in order to avoid any possibility of further legal action, cannot be construed as an acceptance of Defendants' so-called "offer" to enter into a unilateral contract.[4] The Court finds that there was no offer, and hence, no settlement agreement between Plaintiffs and the Secretary of the Department of Labor.[5] Since there was no settlement agreement, Defendants' imposition of a civil penalty against Plaintiffs for the alleged breach of fiduciary duty exceeded Defendants' statutory authority. The imposition of the civil penalty must, therefore, be set aside. Having found that Defendants exceeded their statutory authority by imposing the civil penalty on Plaintiffs for breach of fiduciary duty, the Court need not consider Plaintiffs' claims that Defendants' decision was arbitrary and capricious or an abuse of discretion.

## III. Conclusion

The Court finds that because there was no court order and no settlement agreement between the parties, Defendants exceeded their statutory authority by imposing a civil penalty on Plaintiffs for breach of fiduciary duty. The civil penalty of

---

4. The Court also notes that since *Citywide* was decided, at least three bills have been introduced to amend the language in 29 U.S.C. § 1132(*l*) so that "applicable recovery amount" means any amount recovered from a fiduciary with respect to a breach or violation on or after the thirtieth day following receipt of notice of the violation "whether paid voluntarily or by order of a court." *See* H.R. Rep. 106–331(I), at 132 (1999), 1999 WL 777959; H.R. Rep. 106–467(I), at 103–04 (1999), 1999 WL 1029530; H.R. Conf. Rep. 106–1004, at 223–24 (2000), 2000 WL 1623047. The proposed amendment highlights the distinction between voluntary compliance and a true settlement agreement.

5. It is true, as Defendants point out, that Plaintiffs cannot have it both ways. Either a settlement agreement exists and Plaintiffs must pay the mandated penalties, or no settlement agreement exists and Defendants are free to pursue further legal action against them. Since the Court has found that no settlement agreement exists, Defendants are not bound by their promise to forego filing suit against Plaintiffs for breach of fiduciary duty. However, since the loans have already been repaid in full, it is unclear what Defendants would gain by pursuing this any further.

$46,504.32 is therefore set aside and Defendants are permanently enjoined from taking any further action to enforce the civil penalty. Plaintiffs' Motion for Summary Judgment (Record at 7) is therefore **GRANTED** and Defendants' Motion for Summary Judgment (Record at 88) is **DENIED**. The Clerk is directed to enter judgment in favor of Plaintiffs.

**IT IS SO ORDERED.**