**LIBERTARIAN PARTY OF OHIO, et al., Plaintiffs,**

v.

**Jon HUSTED, et al., Defendants.**

No. 2:13–cv–953.

United States District Court, S.D. Ohio, Eastern Division.

Filed July 11, 2014.

Mark R. Brown, Mark George Kafantaris, Kafantaris Law Offices, Columbus, OH, for Plaintiffs.

Richard Nicholas Coglianese, Bridget C. Coontz, Halli Brownfield Watson, Ohio Attorney General, Columbus, OH, for Defendants.

## OPINION AND ORDER

TERENCE P. KEMP, United States Magistrate Judge.

This ballot access case, brought by the Libertarian Party of Ohio and three individuals, has recently produced a flurry of discovery-related motions. The Court will not set forth the facts extensively (they appear in the Court of Appeals' decision of May 1, 2014, *see* Doc. 107) but will limit its recitation of the facts to those that relate to the precise issues presented by each motion being ruled upon. This Opinion and Order deals with Plaintiffs' motion to compel depositions (Doc. 116), the separate response filed by Intervenor Gregory Felsoci (Doc. 120), and Plaintiffs' reply to that response (Docs. 124). The other issues raised in the motion to compel will be the subject of a subsequent Opinion and Order. For the following reasons, the motion to compel Mr. Felsoci's deposition will be granted.

### I. *A Brief Factual Background*

Gregory Felsoci is a party to this case, having successfully intervened as a defendant. *See* Doc. 85. As the Court of Appeals noted, Mr. Felsoci "is the individual whose protest of the certification of LPO candidates resulted in [Libertarian Party gubernatorial candidate Charlie] Earl's removal from the ballot." Doc. 107, at 3. He has never been deposed. Plaintiffs tried unsuccessfully to arrange his deposition; when that effort failed, they served a notice of deposition on June 13, 2014, setting the deposition for July 7, 2014. *See* Doc. 115. Almost immediately thereafter, Plaintiffs moved to compel the deposition. Although that is procedurally unusual, the parties agreed, during a telephone conference with the Court, that they

had reached an impasse over whether the deposition would go forward as noticed, and agreed to have the issue resolved through briefing on the motion to compel. That briefing is now complete.

Mr. Felsoci's unwillingness to be deposed rests on three grounds: that any deposition would simply duplicate the questions asked and answers given during the preliminary injunction hearing; that the parties made an agreement that Mr. Felsoci would not be deposed in this case; and that Mr. Felsoci has no relevant testimony to offer concerning any of the claims which are still "on the table" in this case. The merits of these arguments are discussed below. Here, the Court sets out the factual predicates for each party's position.

Plaintiffs called Mr. Felsoci as a witness at the preliminary injunction hearing. The transcript of that testimony is Doc. 86. His testimony covers 26 pages. Plaintiffs' counsel's examination appears at pages 3–21; the remainder of the transcript consists of questions posed by Mr. Felsoci's attorney and by the Court. To summarize the testimony very briefly, Mr. Felsoci described how he was made aware of the facts underlying his protest, why he filed it, how his attorney (John Zeiger) or someone from Mr. Zeiger's firm contacted Mr. Felsoci about the protest, and the fact that he was not paying Mr. Zeiger's firm and did not know if anyone else was.

Shortly after the preliminary injunction hearing, Plaintiffs served interrogatories on Mr. Felsoci. A copy of those interrogatories is attached as an exhibit to Doc. 91, which is a motion for a protective order filed by Mr. Felsoci in response to an earlier deposition notice. The basis for that motion, apart from issues about the unavailability of Mr. Felsoci's counsel, is that the subject of the deposition related exclusively to a third amended complaint which had been proposed but not filed. The five interrogatories which had been sent asked if Mr. Felsoci was paid by or through Mr. Zeiger, his law firm, John Musca (who brought the paid circulator issue to Mr. Felsoci's attention), or anyone else, for filing his protest, and, if so, when and how much. Plaintiffs responded to the motion for

a protective order by filing a motion to compel both answers to the interrogatories and a deposition. *See* Doc. 92.

One of Plaintiffs' attorneys, Mark Brown, submitted a declaration in support of that motion. Mr. Brown explained that he had intended to recall Mr. Felsoci as a witness later in the preliminary injunction hearing but was unable to do so because Mr. Felsoci did not attend the last day of the hearing, and that he had additional questions to which he wanted answers in order to supplement the record filed with the Court of Appeals. Mr. Brown also stated that "Mr. Felsoci may present answers, under oath, in lieu of the scheduled deposition, to the Interrogatories propounded to him through counsel by me on Saturday, March 22, 2014," or, alternatively, he could appear for a deposition at any time before March 28, 2014. Doc. 92, Attachment 1.

Three more memoranda were filed relating to those motions, all on April 15, 2014. *See* Docs. 100, 101, and 102. Collectively, they reflect that as of that date, Mr. Felsoci had neither answered the interrogatories nor been deposed—facts that none of the parties dispute. Further, in their reply, Plaintiffs renewed their request that Mr. Felsoci be required to appear for a deposition. *See* Doc. 102, at 1 "(Felsoci should be compelled to sit for his deposition"). Documents attached to Plaintiffs' reply memorandum on the later motion to compel (which are not authenticated, but which the Court accepts as genuine for purposes of ruling on the motion), show that Mr. Felsoci's answers to the five interrogatories were served on April 16, 2014. They also show that Mr. Brown sent Mr. Zeiger an email on March 25, 2014, asking for those answers by "Friday" (i.e. March 28, 2014) or, alternatively, a deposition by that date.

Finally, some discussion about further questioning of Mr. Felsoci (although not in the context of a deposition) took place on the last day of the preliminary injunction hearing. Plaintiffs asked to recall Mr. Felsoci to ask "just one question ...." Mr. Felsoci's counsel took the position that Mr. Felsoci had been released by Judge Watson from further attendance at the hearing and they advised Mr. Brown that Mr. Felsoci was not present. Judge Watson then asked for a proffer; counsel responded that he would ask Mr. Felsoci "if he's being paid by either the law firm or the Republican Party to protest." It appears that Plaintiffs wished to call Mr. Musca to ask similar questions. He, too, was not present. Plaintiffs then attempted to call Mr. Zeiger as a witness in order to ask "who is paying him to represent Mr. Felsoci; whether he is coordinating his activities with anyone in the Ohio Republican Party." The parties argued about whether Mr. Zeiger could properly be called; another attorney for Mr. Felsoci, Mr. Tigges, argued that Mr. Zeiger would be breaching client confidentiality if he answered such questions and that in any event such evidence was not relevant to any claim in the case. Judge Watson concluded, after hearing from both sides, that "I don't think Mr. Zeiger's testimony is going to be relevant." He also commented that Mr. Musca's testimony on this subject might be "an inquiry for another day" and that the relevance of this testimony might depend "upon whether the case expands or contracts...." *See* Doc. 132, at 2–10.

## II. *Analysis*

◼ The key undisputed facts are these: Mr. Felsoci is a party; he has not been deposed in the case; and his deposition was properly noticed pursuant to Fed.R.Civ.P. 30(b). The general rule which applies to these facts is that "[u]nder the liberal discovery principles of the Federal Rules" a party is "required to carry a heavy burden" to show why a properly-noticed deposition should not go forward. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

◼ Although difficult to do, a party may meet that burden in a number of different ways. For example, the party may prove that he or she has already been deposed in the case or that the deposition would exceed the ten-deposition limit. *See* Fed.R.Civ.P. 30(a)(2). The party might also show that the deposition has been noticed too early (before the Rule 26(f) conference) or too late (after the discovery cutoff date); or that he or she falls into a category of witnesses, like heads of agencies, CEOs of large corporations, or the opposing party's attorney, who are easy targets for harassment, and for whom the

burden of showing the appropriateness of the deposition may shift to the requesting party. *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979); *see also Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1987).

It is also possible, but much more difficult, to obtain an order precluding a party's deposition from taking place on grounds that the party has no relevant knowledge, or that, despite the fact that the party has not been deposed even once, the deposition would be "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(i), (iii). However, granting such orders absent a specific and persuasive showing of good cause would cut against the fact that, under Rule 30(a), "[a] party may ... depose any person, including a party, without leave of court...." The fact that depositions "relate to [a party's] trial preparation and defense .... [which] are important interests, and great care must be taken to avoid their unnecessary infringement," *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985), explains why the courts impose a heavy burden on the movant in these circumstances. As the court in *EEOC v. Freeman,* 2012 WL 2370122, *1 (D.Md. June 21, 2012) aptly observed,

> In general, motions for protective orders "seeking to prevent the taking of a deposition [are] regarded unfavorably by the courts." *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 125 (D.Md.2009). Such orders "should be rarely granted absent extraordinary circumstances;" therefore, the moving party bears a "heavy burden." *Id.* (quoting *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C.2001)) (internal quotation marks omitted).

Mr. Felsoci's motion to avoid being deposed even once, despite the fact that he is a party to this case (and a voluntary one at that) must be judged under these principles.

### A. *Duplication or Harassment*

■ Mr. Felsoci's first argument is that he was asked, and answered, every question relevant to this case at the preliminary injunction hearing. Consequently, he contends that Plaintiffs' "duplicitous [sic—probably should be duplicative] examination of him at deposition would serve no purpose other than to harass him." Memorandum in Opposition, Doc. 120, at 9. He bases this argument, at least in part, on the fact that Plaintiffs have not identified any topics about which he would be deposed that were not already covered by his preliminary injunction hearing testimony.

■ One conceptual problem with such an argument is that it can be used to force a party noticing a deposition to describe, in advance, the subjects to be covered, when that party ordinarily has no such obligation. The only time that, by Rule, a party must specify the subjects about which it wishes to depose a witness is when noticing a Rule 30(b)(6) deposition. Other deposition notices need not contain that information. *See* Fed. R.Civ.P. 30(b)(1), (3); *see also Bennett v. The Westover, Inc.,* 27 F.Supp. 10, 11 (S.D.N.Y. 1938) ("The Federal Rules of Civil Procedure do not require that the 'notice to take deposition' state the matters upon which the examination is sought").

■ The noticing party may be required to explain its purposes in taking a deposition, however, if the facts suggest that those purposes are improper. That concept underlies the "apex deposition" rule applied in some jurisdictions, *see Salter v. Upjohn, supra,* where the identity of the deponent itself indicates an intent to harass rather than an intent to engage in legitimate discovery. It also explains the restriction on a second deposition of the same witness; once the deposing party has had a full opportunity to question a witness, doing that for a second time is presumptively duplicative and it is appropriate to ask the requesting party to explain what else might be asked that has not already been covered adequately in the first proceeding. *Cf. Powell v. United Parcel Service, Inc.,* 2011 WL 124600, *1 (S.D.Ind. Jan. 13, 2011) (in order to grant leave to take a second deposition of the same witness, the

Court's order must be "consistent with Rule 26(b)(2), which provides that discovery must be limited when it is unreasonably duplicative ...."). Otherwise, however, the courts should be reluctant to permit a party who wishes not to be deposed to use a procedural device such as a motion for a protective order to force the requesting party to specify, in advance, the subject of the deposition as a precondition to proceeding.

Here, there is at least some justification (although not a very compelling one) for forcing Plaintiffs to disclose in advance the subject matter of Mr. Felsoci's proposed deposition—the fact that he has testified before in the case, although not at a deposition, and only for the limited purposes of a preliminary injunction hearing. And Plaintiffs have volunteered certain information about the subject of the deposition. If, based on this record, the Court was completely satisfied that not a single additional and relevant question might be asked of Mr. Felsoci, that might justify an order preventing his deposition from going forward.

Plaintiffs argue that, to date, they have been unable to discover who financed Mr. Felsoci's protest. They assert that if the persons behind that protest were representatives either of the Kasich administration, including the Secretary of State's office, or the Ohio Republican Party, that would bolster their as-applied challenge to Ohio Rev.Code § 3501.38(E)(1). They acknowledge that he has stated, under oath, that he was unaware of who was paying his lawyer, but point out that (at least in their view) counsel had and has an ethical obligation to provide that information to Mr. Felsoci, and that given the amount of time which has passed since the preliminary injunction hearing, he may now know the answer to that question. They also claim to have other relevant avenues of questioning to explore, but provide no specifics about them. *See* Plaintiffs' Reply Memorandum, Doc. 124, at 16 n. 26.

█ Leaving aside, for the moment, the potential relevance of this testimony, the Court concludes that Mr. Felsoci has not met his "heavy burden" of showing that his deposition would be "unreasonably cumulative or duplicative," as required by Rule 26(b)(2)(C)(i). Wanting to depose a party to litigation who has testified only for a brief time at a preliminary injunction hearing does not create any presumption that the sole purpose of the deposition is to harass the witness. Any presumption in this case runs the opposite way—parties to litigation, even those who may have offered testimony at an earlier hearing, are still presumptively subject to being deposed. Unlike a deposition taken during full merits discovery, testimony at a preliminary injunction hearing is usually offered only for a limited purpose (unless the preliminary injunction hearing is consolidated with the trial on the merits, which did not occur here). It is also not conducted with the same flexibility as is a deposition, and, significantly, the proper scope of testimony at a court hearing is governed by the Federal Rules of Evidence, while the more liberal standard of relevance set forth in Rule 26(b)(1) applies at a deposition. It is, simply, not a substitute for a deposition. Any party arguing to the contrary has a truly heavy burden of persuasion, and that has not been met here.

Plaintiffs may well have additional follow-up questions to ask Mr. Felsoci before summary judgment motions are filed, and they should be allowed to ask them in the traditional setting of a deposition. They have made at least a colorable argument that Mr. Felsoci may have additional information to offer on the subject of who is actually behind his protest, and they should be allowed to update their inquiries about that. Even if he continues to profess ignorance on that subject, Plaintiffs ought to be allowed to test the credibility of that claim through questioning. That is a proper subject of discovery, *see Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455 (S.D.N.Y.1988). On the other hand, if he claims that he now knows the answer to that question, but cannot disclose it for reasons of confidentiality or privilege, Plaintiffs are entitled to ask questions concerning the basis of that claim. *See Devlyne v. Lassen Mun. Utility Dist.*, 2011 WL 4905672, *4 (E.D.Cal. Oct. 14, 2011) (counsel must be permitted to ask foundational questions before a privilege is asserted).

Additionally, however, the Court does not believe that Plaintiffs are required to make an additional showing about the potential

subject matters to be discussed. As the Court's analysis shows, Mr. Felsoci simply has not met his initial burden of showing that a first deposition where the full merits of the case can be explored imposes an unreasonable burden on him or is unreasonably cumulative or duplicative. Further, and as the parties are aware, there are ways (such as taking a deposition by remote means) to reduce any physical or monetary burden in order to achieve the goal of proportionality articulated in Rule 26(b)(2)(C)(iii). Consequently, the first justification offered by Mr. Felsoci is insufficient to prevent his deposition from going forward.

### B. *The Alleged Agreement*

■ Mr. Felsoci's second argument is that the exchange of correspondence in March of this year constitutes an agreement that if he answered the five interrogatories served on him immediately after the preliminary injunction hearing, Plaintiffs would never depose him in this case. As he articulates this argument, because he held up his end of the bargain by answering the interrogatories, he is now entitled to the promised *quid pro quo*. This argument, while superficially appealing, merits only a brief discussion.

■ Fed.R.Civ.P. 29 permits the parties to make agreements about discovery. That rule is generally construed to be "quite clear ... in requiring, as a condition of enforcement, that the agreements be in writing and in the form of a stipulation." *Pescia v. Auburn Ford–Lincoln Mercury Inc.*, 177 F.R.D. 509, 510 (M.D.Ala.1997). Some courts have required an actual stipulation, holding that even an exchange of letters does not satisfy the Rule's requirement. *See, e.g., Cochran v. City of Huntington*, 2006 WL 897443 *2 (N.D.Ind. March 31, 2006); *see also Bryant v. Mattel, Inc.*, 2007 WL 5416681 (C.D.Cal. Jan. 26, 2007) ("[b]ecause the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation"). Even if this principle is not strictly applied (and there is currently some ambiguity about that, *see Bricker v. R & A. Pizza, Inc.*, 2011 WL 3941982 (S.D.Ohio Sept. 6, 2011)), the Court has an obligation to read any purported written discovery agreement fairly and reasonably, and to place the burden of persuasion on the party asserting that an agreement has

been reached. *See id.* at *6, *citing Huffer v. Herman*, 168 F.Supp.2d 815, 823 (S.D.Ohio 2001).

Here, a fair reading of the exchanged correspondence which allegedly constitutes a stipulation concerning Mr. Felsoci's position does not support his argument that Plaintiffs waived, for all purposes, their right to depose him in connection with the merits of the case. That is one possible interpretation, but Plaintiffs' view of the proposal they made—that they wanted additional evidence for the appeal and would take either a deposition or interrogatory answers if those were provided before March 28, 2014—is at least as plausible, if not more so. Further, they did not get those answers by that date, so that even if there was an agreement, Mr. Felsoci did not provide the performance Plaintiffs asked for in exchange for their supposed promise not to take his deposition. Something much more definite would be needed to persuade the Court that this exchange of correspondence constituted a binding and enforceable stipulation that Mr. Felsoci would never be deposed by Plaintiffs.

### C. *Relevance*

The third argument which Mr. Felsoci advances is that he has no relevant testimony to offer. He makes this argument very briefly and in a specific context: as he phrases it, "Plaintiffs should not be permitted to depose Mr. Felsoci because they have abandoned all remaining claims in the operative complaint that pertain to him." Memorandum in Opposition, Doc. 120, at 10. He bases this argument on the fact that Plaintiffs are seeking to amend Count Seven of the existing complaint, a request not yet ruled upon, noting that "it makes little sense to subject Mr. Felsoci to a deposition on a claim that Plaintiffs themselves are seeking to replace with a different one." *Id.* at 10–11. The Secretary of State makes a similar argument in his opposing memorandum. *See* Doc. 121.

■ This Court is unaware of any authority suggesting either that, by moving to amend a complaint, a plaintiff has "abandoned" the claims in the currently operative complaint. As one court has observed, "[i]f it were true that a motion for leave to file an

amended complaint was an abandonment of the existing complaint, then every denial of leave to amend would result in the dismissal of a case. This is not the case, so the court rejects that argument." *Goodman v. Clark*, 2010 WL 2838396, \*18 (N.D.Ind. July 12, 2010). Similarly, there is no basis for the claim that discovery should be stayed while a motion for leave to amend is pending. At any specific time in a pending case, the claims before the Court are those in a properly-filed complaint—not ones which were in a complaint since amended, and certainly not those in a complaint which has yet to be filed, and may never be. In fact, Mr. Felsoci also argues that it would be improper for him to be deposed on any claims contained only in the proposed Third Amended Complaint, a proposition with which the Court generally agrees (although the Court has the discretion, under Rule 26(b)(1), to allow discovery which is broader than the issues framed by the existing pleadings); but that means, if his argument were accepted, that just by moving to amend, a plaintiff relegates the case to a kind of judicial limbo where discovery cannot be taken either on the existing complaint or the proposed one. There is certainly nothing in the text of any rule relating to discovery which suggests that result, nor does common sense support it.

■ The broader argument that Mr. Felsoci has nothing relevant to say, and should not be deposed for that reason, is not one which has gained much traction in the federal courts. Again, it bears repeating that "[i]n general, protective orders totally prohibiting a deposition should be rarely granted absent extraordinary circumstances," *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 84 (M.D.N.C.1987), and that "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. New York University Medical Center*, 172 F.R.D. 130, 132 (S.D.N.Y.1997). As that court said, "in ordinary circumstances, [it] does [not] matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking the discovery is entitled to test the asserted lack of knowledge." *Id; see also Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D.Conn. 1974) ("the general rule is that a claimed lack of knowledge does not provide sufficient grounds for a protective order; the other side is allowed to test this claim by deposing the witness").

Although he did not specifically make this argument in his Memorandum in Opposition, Mr. Felsoci, through counsel and at a status conference dealing with other discovery motions which was held on July 9, 2014, asked the Court to review certain comments made by Judge Watson as part of the preliminary injunction proceeding—those quoted above as part of the factual background—and to reach the conclusion that Judge Watson has already ruled that Mr. Felsoci has no additional relevant testimony to offer. The Court declines to reach that conclusion for several reasons. First, Mr. Felsoci is assuming that the only questions he will be asked at his deposition concern who is paying his attorneys. The record does not demonstrate that conclusively, and, again, Plaintiffs are not required to disclose in advance of a deposition either each subject on which they wish to examine a witness—especially one who has voluntarily become a party to a lawsuit—or every single question they intend to ask. Second, Judge Watson's comments were made in the context of an evidentiary hearing where the Federal Rules of Evidence apply. He was not purporting to make a discovery-based ruling, nor is that what the parties had asked him to do. The issue presented by the pending discovery motions is legally distinct from the one argued to Judge Watson, and to the extent that his comments, made in the context of a preliminary injunction hearing and not a trial on the merits of Plaintiffs' as-applied claim, constituted a ruling that information about who was financing Mr. Felsoci's protest might be relevant only if the case changed in posture, those comments do not bind the Court concerning this discovery ruling. *See Levick v. Maimonides Medical Center*, 2011 WL 1673782, \*3 (E.D.N.Y. May 3, 2011) ("just because something may not be admissible under the Federal Rules of Evidence does not mean that it is not discoverable").

### III. *Conclusion and Order*

Reduced to its essence, Plaintiffs' motion to compel the deposition of Gregory Felsoci

presents a simple question: ought a party to litigation be required to sit for a deposition? The case law holds, uniformly, that "the burden to show good cause for an order prohibiting the taking of a deposition is especially heavy." *Wood v. Harshbarger*, 2014 WL 3056855, *3 (S.D.W.Va. July 7, 2014). Mr. Felsoci has simply not met that burden here. He has intervened in this case; he filed the protest which resulted in Mr. Earl's exclusion from the ballot; and he cannot legitimately claim to be exempt from the ordinary rule that, as a party and a witness, he is subject to being deposed. For the reasons cited above, the motion to compel (Doc. 116) is granted as it relates to Mr. Felsoci's deposition. Further, given the need for all decisions in this case to be expedited, the Court will shorten the time for seeking reconsideration of this order to five days and will shorten the other related deadlines accordingly.

### IV. *Motion for Reconsideration*

Any party may, within five days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 14–01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due five days after objections are filed and replies by the objecting party are due three days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.